# A. H. SPRAY

*v.*

# RICHARD AMMERMAN.

66  309
24a 272

1.  ANIMALS—*right to remove cattle trespassing.*  Where cattle are tres-
passing upon the premises of a party, he, and also the members of his
family, have the undoubted right to use all reasonable means and sufficient
force to remove them, and there is nothing illegal in driving such cattle
from the premises with dogs, if no unnecessary injury is done to the stock.

2.  When the plaintiff and defendant occupied adjoining premises, and
the cattle of the latter were in the habit of escaping through an insuffi-
cient division fence into the premises of the plaintiff, the defect in such
fence being attributable to the defendant, and the plaintiff's daughter
chased them back with the plaintiff's dog, and shortly afterwards the de-
fendant came and shot the dog on plaintiff's premises: *Held,* that the
defendant had no right to kill the dog, unless he was a nuisance in the
neighborhood, but if injury ensued beyond what was necessary to drive
the cattle back upon his own premises he had his action therefor.

3.  DOGS—*right to kill.*  If the owner of cattle, without fault on his part,
is unable to protect them, when they are not trespassing upon the land of
the plaintiff, from serious injury from the dog of the latter, then it seems
he would have the right to kill such dog, to protect his stock.

4.  SAME—*evidence of vicious propensity.*  The fact that a dog had chased
defendant's cattle from the plaintiff's land back to the defendant's prem-
ises where they had escaped through an insufficient division fence, only
when directed so to do by the plaintiff, or members of his family, or even
his disposition to keep trespassing stock from his master's premises, does
not prove a vicious propensity in him.

5.  SAME—*instruction.*  In a suit to recover damages for the killing of
a dog, the killing was sought to be justified as necessary to protect the
defendant's cattle from serious injury.  The evidence did not show that
the dog ever bit or worried the defendant's stock, but simply run them,
and that only when set after them, or when they were trespassing upon
the plaintiff.  The court instructed the jury that if they found, from the
evidence, that the defendant could not otherwise protect his property from
the ravages of the dog, he had a right to kill him; also, that if the dog
was in the habit of trespassing on defendant's premises and running his
stock, and he could not otherwise protect himself from the frequent at-
tacks of the dog, then he had a right to kill him: *Held,* that the in-
struction was too broad and calculated to mislead the jury, and was not
warranted by the facts.

6. DOGS—*whether they have a commercial value, is a question of fact.* In a suit by the owner of a dog to recover damages for killing the same, the court instructed the jury that dogs had no established commercial value in that county: *Held*, that this was not a question of law, but one of fact for the determination of the jury

7. SAME—*evidence to show value.* In a suit to recover for the killing of a dog, the court instructed the jury that they should find his value from the evidence of his qualities, both good and bad, rather than from the opinions of witnesses, who based their estimates on the loss of the services of the dog for a given time: *Held*, that the instruction was erroneous, as the jury had the right to consider both kinds of the evidence in fixing the value of the dog, and as it excluded from consideration any question of commercial value and loss of services.

8. RECOUPMENT—*in mitigation in case of tort.* In an action by the plaintiff to recover damages for the killing of his dog by the defendant, the latter may show that he wrongfully sustained damages from the transaction, for which he was sued, or immediately connected with it, in mitigation of damages; but the matter shown in mitigation must have been not only wrongful, but must be immediately connected with the tort for which he is sued.

9. But where the defendant killed plaintiff's dog because he was used in chasing defendant's cattle from the plaintiff's premises upon which they were trespassing, and they received no more injury than was reasonably necessary in driving them from the plaintiff's field: *Held*, that such injury could not be shown in mitigation.

APPEAL from the Circuit Court of Iroquois county; the Hon. CHARLES H. WOOD, Judge, presiding.

This was an action by the appellant to recover damages for the killing of his dog.

On the trial the circuit court, amongst others, gave the following instructions at the request of the defendant below:

1. "If you find from the evidence that the defendant could not otherwise protect his property from the ravages of the dog, defendant had a right to kill him.

2. "If you believe from the evidence that this dog was in the habit of trespassing on defendant's premises and running his stock, and he could not otherwise protect himself from the frequent attacks of the dog, then he had a right to kill him.

3. "Dogs are not articles of commercial value in this county, and in order to find the value of such dog, you must do so from the evidence of his qualities, both good and bad, rather than from evidence of witnesses, who base their opinions on the loss of services of a dog for a given time."

Messrs. ROFF, DOYLE & McCULLOUGH, for the appellant.

Messrs. BLADES & KAY, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action brought by appellant, before a justice of the peace, against appellee, to recover damages for killing a dog owned by appellant. The case was afterwards removed to the circuit court by appeal, where a trial was had by the court and a jury, resulting in favor of defendant, and the record is brought by plaintiff to this court on appeal, and various errors are assigned.

It appears that the parties live on adjoining farms, and that a partition fence between them was insufficient to turn stock; that appellee's cattle were in the habit of getting over this fence upon the premises of appellant, and he and members of his family were in the habit, when driving the cattle back on appellee's premises, of using the dog for the purpose, and from this source bickerings had grown up between the parties, complaints and remonstrances had frequently occurred, and good feeling between the parties seems to have ceased. It seems, from the evidence, that the parties had agreed to make and had partly made a good plank partition fence between their fields, and appellee was to remove the brush fence through which the cattle seem to have passed, and appellant was to replace it with a good plank fence. Appellee had removed a portion of the brush fence and appellant had supplied that portion with the fence as agreed, and appellant swears that he had requested appellee to remove the balance that he might put up the plank fence, but

appellee replied he did not have time, and had neglected to do so up to the time he shot the dog.

On the day appellee killed the dog, as appellant's daughter testifies, and she is not contradicted, appellee's cattle got through this brush fence into appellant's field, and she set the dog after them to drive them back upon appellant's pasture; the dog ran after them until they had passed into appellee's field and a short distance beyond, and then returned to where she was, near her father's house, and laid down near her; soon after, appellee came with a gun, and whilst the dog was lying there, shot and killed him.

Appellee, in his testimony, details many occurrences entirely foreign to the case, much of it calculated to prejudice the case in his favor; and upon this the instructions given for him were calculated to mislead. The first and second given for him were too broad in the rule they announce. There is no evidence, that we are able to find, from which it appeared the dog bit or worried appellee's stock, but simply run them, and only when set after them or when the cattle were trespassing on appellant. It is perfectly apparent, had the fence between the fields been made there would not have been the slightest occasion for killing the dog; and it appears that the fault in not making the fence grew out of appellee neglecting, as he had agreed, to remove the brush fence, that appellant might replace it with one that would have turned the stock. Even if the rule was as announced, still the facts did not warrant the instructions as given. They should have been modified so as to have informed the jury that if it appeared from the evidence that appellee, without fault on his part, was unable to protect his cattle, when not trespassing on appellant, from serious injury from the dog, then he would have a right to kill it. But when the cattle were trespassing on appellant he had the undoubted right, and the members of his family had the same right, to use all reasonable means and sufficient force to remove them from his premises. And it seems both parties used their dogs in

driving the other's cattle from his premises, and we fail to see anything illegal in doing so, if no unnecessary injury was done to the stock.

Again, the first instruction informs the jury that if he could not otherwise protect his stock from the ravages of the dog, then he might kill him. The evidence did not authorize the use of the term ravage. It means to lay waste or destroy by violence, to spoil, to waste, etc., and there is no pretense that there was any danger of the dog destroying the cattle. The evidence only shows the dog was in the habit of going after the cattle when they were trespassing on appellant's place, and following them upon appellee's premises; and the third instruction assumes, as a matter of law, that such dogs have not an established commercial value in that county. That was not a question of law, but one of fact for the determination of the jury; and not only so, but the evidence did show that animals of that character had been frequently sold, and for a valuable consideration. Several of the witnesses testified that they had purchased and paid money for such animals. Again, it said to the jury, that they should find his value from his qualities rather than from the opinions of witnesses, who place their estimate on the loss of services of the dog for a given time. This is wrong, as it is clear that the jury would have a right to consider both, in fixing the value of the dog. This instruction took from the jury the consideration of any question of commercial value and loss of services, and hence was too restricted in its scope and should not have been given.

It is also urged that the court below erred in refusing instructions asked by appellant. We are of the opinion the first of his refused instructions was proper, and should have been given. The habits of the dog did not justify appellee in killing him unless he was a nuisance to the neighborhood, and the evidence fails to show he was. On this occasion the dog was directed by the daughter of appellant to go after the cattle, and that gave appellee no right to kill the dog;

but if injury ensued beyond what was necessary to drive them back on his own premises, then he had his action for the injury. The animal, of his own will, had done no wrong, he had only done what he was directed, and this did not prove in him a vicious propensity, nor did his doing so, when directed, on other occasions, or even his disposition to drive appellee's stock back to his own premises when trespassing on his master.

It is also urged that the court erred in instructing the jury that appellee could recoup the damages occasioned by the dog at the time he was killed. The rule is correct in a limited sense, but not in the broad terms in which it is announced in the instructions. That defendant may show that he has wrongfully sustained damages from the transaction as immediately connected with it, for which he is sued, in mitigation of damages, is no doubt true; but the matter shown in mitigation must have been not only wrongful, but must be immediately connected with the tort for which suit was brought. If, in this case, the cattle received injury, but no more than was reasonably necessary in driving them from appellant's field to that of appellee, then such injury could not be shown in mitigation; but any excess over and above what may have been reasonably necessary, might. The instructions were too broad, and may have, and no doubt did, mislead the jury.

For the errors indicated the judgment is reversed and the cause remanded.

*Judgment reversed.*