AARON ANDERSON

V.

WILLARD M. SMITH.

</div>

1.  TRESPASS BY ANIMALS—RIGHT TO KILL TRESPASSER.—The law from the earliest times has recognized the right of a man to defend his property

Anderson v. Smith.

against the unlawful acts of man or beast, and in the case of trespass by animals he may carry this right of protection of his property to the extent that he will be justified in killing the trespasser, provided the relative value of his own property and the animal trespassing be not disproportionate and he has exercised the right in a reasonable manner, all the circumstances surrounding the transaction being considered. He would not be justified in killing a valuable animal found destroying property of comparatively little value.

2. DANGER OF DESTRUCTION OF PROPERTY.—A vicious animal may lawfully be killed if found by the owner of property under such circumstances as would indicate an apparent danger that his property would be injured or destroyed unless the aggressor was killed.

APPEAL from the Circuit Court of LaSalle county; the Hon. Josiah McRoberts, Judge, presiding. Opinion filed Dec. 4, 1880

This was an action of trespass for killing dogs, brought by appellee against the appellant before a justice of the peace, and appealed to circuit court where, upon a trial before the court and jury, a verdict and judgment for $10, were rendered against the appellant, and he brings the record to this court, and assigns for error that the court below misdirected the jury as to the law applicable to the case.

The plaintiff below introduced testimony tending to show that in August 1878, he and the defendant were residents of the city of Mendota, and that at that time, he was the owner of an imported red Irish setter bitch named " Bridget, " and three pups from her, sired by an imported red Irish setter dog named " Rufus " of Detroit, Michigan. That on the 9th day of August, two of the pups escaped from their kennel where they had been confined with their mother. That being informed that defendant had killed them, he asked the defendant about it, and was told by the defendant that he had shot them, because he was afraid the pups would kill his chickens. That the pups were worth $50 each, and the mother worth $200. That he paid $25 for the use of the thoroughbred " Rufus, " and that the expense of sending the slut to the domicile of " Rufus " was $9, making a total cost for the breeding of the pups of $34.

The defendant gave evidence tending to show that in August 1878, he was engaged in raising thoroughbred chickens, known as the Plymouth Rock breed, and on the morning of said 9th

of August he heard a disturbance among his chickens on his own premises, and on looking out saw a large dog with one of the hens in his mouth, in the act of jumping over the fence and the two pups in question in the yard; that he called out to them when the large dog sprang over the fence, and dropped the hen upon the outside in the street; that he took his revolver and ran out doors, and that the pups had in the meantime got through the fence and had hold of the hen worrying her when he shot them, and that the chicken was badly torn and bitten. That he had during the season lost thirty-six chickens, he believed by dogs, as he had seen dogs similar in appearance to these on his premises, but could not be sure they were the same dogs; nor that, in fact, the chickens lost before that time were killed by dogs.

The court below gave the following instructions to the jury, numbered 5 and 6, respectively, on behalf of the plaintiff:

"The court below further instructs the jury that dogs are recognized as personal property by the law of this state and that if they believe from the evidence that the defendant shot and killed the puppies of the plaintiff, they should find for the plaintiff and assess the damages at what they find from the evidence, said puppies were reasonably worth at the time they were so killed. And the fact if proven, that the puppies at the time they were so killed, were trespassing upon the premises of the defendant would be no justification whatever to the defendant, and that he would have no more right to kill said puppies, than he would have to kill a breachy horse or cow, belonging to his neighbor and found trespassing upon his premises.

" The court further instructs the jury that in such cases as the worrying or killing of domestic animals by dogs, the killing of the dog is only warranted where there is no other possible way to protect the stock from the ravages of the dogs, and the proper remedy in all such cases is a suit for damages against the owner of the dog or dogs, except only in the case of sheep-killing, in which case the law allows the killing of the dog in addition to the suit for damages."

To which the defendant took his exceptions. As the other

instructions for plaintiff announce in substance the same rule as the fifth, it is not necessary to set them out at length

Messrs. Richolson & Snow and Mr. E. S. Browne, for appellant; that dogs have always been esteemed base property and entitled to less consideration than property in other domestic animals cited Woolf v. Chalker, 31 Conn. 121; Findlay v. Bear, 8 S. &. R. 571; 4 Black, Com. 235; King v. Kline, 6 Pa. St. 320.

It is only sufficient to show an apparent danger: Campbell v. The People, 16 Ill. 17.

The owner of domestic animals is justified in killing a dog found worrying them: Marshall v. Blackshire, 44 Iowa, 475; Leonard v. Wilkins, 9 Johns. 232; 1 Hilliard on Torts, 140; Brill v. Flagler, 23 Wend. 354; Putnam v. Payne, 13 Johns. 312; King v. Kline, 6 Pa. St. 318; Protheroe v. Mathews, 5 C. & P. 581; Aldrich v. Wright, 53 N. H. 398; Barrington v. Turner, 3 Lev. 25.

Mr. L. W. Brewer, for appellee; that to justify the killing, it must be shown to have been necessary to prevent destruction to the animals attacked, cited Jansen v. Brown, 1 Campb. N. P. 41; Wright v. Ramscot, 1 Saund. 84; Hinckly v. Emerson, 4 Cow. 351; Brill v. Flagler, 23 Wend. 354.

Instructions containing mere abstract legal propositions may be refused: Chapman v. Cowrey, 50 Ill. 512; Parker v. Fergus, 52 Ill. 419.

Where it is apparent a new trial would only produce the same result, it should be refused: McConnell v. Kibbe, 33 Ill. 176; Pahlman v. King, 49 Ill. 266; Rankin v. Taylor, 49 Ill. 451.

Pillsbury, J. This case, so far as the amount in controversy is concerned, is very insignificant; but considered as involving the questions of the right to defend animate property against the attacks of other animals, and the extent to which a person may lawfully go in such defense, it becomes one of considerable interest and importance.

It is quite evident from the instructions given for plaintiff

below, and particularly the fifth and sixth, that the court be-
low intended to. inform the jury that the law in this State is,
that a party could not lawfully take the life of the dogs in
question in defense of his poultry under any circumstances, as
the party had an action for his damages, and the law did not
allow any one to go to the extent of killing dogs except in the
one case of killing sheep by them. Do these instructions state
the law as at present existing in this State?

The law from the earliest times has recognized .the right of
a man to defend his property against the unlawful acts of man
or beast, the question in the adjudicated cases not being
whether such right of defense existed, but whether it was prop-
erly exercised in the given case. This right of defending
property from unjustifiable seizures, attacks or destruction, is
inseparably connected with and necessarily attaches to, and
springs from the natural right of acquiring, holding and en-
joying property.

This right exists independently of any provisions of positive
law, either constitutional or statutory, and an examination of
such provisions as well as the rules of the common law, will
show that the right of such defense has ever been recognized
as existing, and that the object of all such enactments and the
establishing of all such rules has been to confine such defense
to what has been deemed by legislatures and judges a reason-
able necessity for its exercise in a given case. It is a rule of
the common law, affirmed by Sec. 148 of our Criminal Code,
that if a person by violence or surprise attempt to commit a
felony upon the person, habitation or property of another, the
latter may repel force by force, and if in the conflict he hap-
pen to kill the offender, the homicide is justifiable. 2 Arch.
Cr. Pr. 225.

The law limits this extreme remedy to cases of threatened
felony, because it places such a transcendent value upon hu-
man life that it conclusively presumes that it is not reasonable
to take the life of a human being when the threatened injury,
if consummated, would be but a mere trespass or misdemeanor.
In such cases the act ceases to be a defense and becomes aggres-
sion. At the same time, while forbidding the shedding of

Anderson v. Smith.

human blood in defense of person or property, where no felony is intended, it does not deprive a party of the right to make such reasonable defense as the necessities of the particular case may require.   A party having the right to defend his person and property, his justification must, in the very nature of things, depend upon the fact whether, in the given case, he has exercised that right in a reasonable or an unreasonable manner, taking into consideration all the circumstances of the case surrounding the transaction, and in this regard every case must be determined from its own circumstances, for it is impossible to establish an iron rule of law that will fully meet the exigencies of every case that may possibly arise.

The most that can properly be said as a rule of law is, that there must be an apparent necessity for the defense, honestly believed to be real, and then the acts of defense must in themselves be reasonable.   Acts beyond reason are excessive.   The consequences of the proposed act to the aggressor should be considered in connection with the consequences of non-action to the party defending, whether the defense be made in favor of person or property; and in case of defense of domestic animals from the attacks of other animals, the relative value of the animals may be a proper circumstance for the jury to consider in arriving at a conclusion whether the defense was a reasonable one under the circumstances. Cooley on Torts, § 346.

If a man should find his neighbor's cat in his poultry yard killing his chickens, it might be reasonable that he should, for the preservation of his fowls, if the necessity was apparent, shoot the cat, while if a valuable horse of the same neighbor was found in the yard, crushing the life out of the chickens, it might not be reasonable to shoot the horse, even if he could not protect his fowls otherwise.   But if the same horse should be found in a yard where there were other horses, and while wrongfully there should attack another equally valuable, and it was apparent that the horse attacked would be killed, would it be unreasonable for the owner of the latter horse to protect his own property upon his own premises, even if the life of his neighbor's horse should be sacrificed to preserve that of his own ?   The law regards the right of the slayer to his horse, in

the case supposed, as sacred as the right of his neighbor to his property, and his horse being where he had a lawful right to be, his owner must have the power to protect him, so long, at least, as the consequences of the necessary acts of defense are not more disastrous to his neighbor, than the consequences of not acting would be to himself.

It appears to me that in cases of the character of the one at bar, the jury must in a great measure be left to judge from all the facts and circumstances in the case, not only of the necessity of any defense, but of the reasonable necessity of the particular defense made.

The jury could but understand from the fifth and sixth instructions that a party could not lawfully defend his fowls, even upon his own premises, against the attacks of dogs, but that he must suffer the injury to be inflicted, and then seek his remedy by action, as they are told that it is only in case of sheep-killing that the law allows the right to kill a dog in defense of property.

Had the jury been permitted to look at the case in all its bearings, they might have found that the "Irish setter pups" were naturally vicious, especially when "birds" were at hand upon which they could commence an education that would, if industriously pursued, render them proficient in their profession in later years, making them honored descendants of a worthy thoroughbred sire. The jury also might have found that these pups, though young in years and small of stature, were, from the fact of their being of such pure "Irish setter blood," far more dangerous to chickens than other older and larger dogs of less exalted lineage.

Suppose the jury had found that there was an apparent danger that the hen would have been killed by the dogs, and a reasonable, prudent man in the position of the defendant at the time of the shooting would have considered it absolutely necessary to take the life of the dogs to preserve the life of his chicken, would the law under such circumstances, justify the defendant in shooting the dogs?

We use the words *apparent danger* because we do not consider that *real* danger is indispensable in defense of property,

Anderson v. Smith.

any more than it is in defense of person. In either case a party must judge of and act from the appearances.

In Cooley on Torts, § 346, it is said that "Sometimes a vicious animal may lawfully be killed, though the circumstances would not support an action against the owner. Thus, if a savage dog is actually found doing mischief, or if it becomes necessary in order to protect property against him, the dog may be killed, whether the owner has notice of his disposition or not."

" If the defendant justifies the shooting of a dog, on the ground that the animal was hunting and chasing deer in a park, or conies in a rabbit warren, sheep in a fold, or fowls in a poultry yard, he must prove that the dog was in hot pursuit at the time he shot." Addison on Torts, page 359.

The same author says, on page 308, " If a dog chases conies in a warren, or game in a preserve, or deer in a park, or sheep in a fold, he may be killed by the owner of the animals, to prevent their destruction, but not after the chasing is discontinued and the peril has ceased."

We have examined all the common law authorities to which our attention has been directed, or that we have been able to find in the time at our disposal, for such purpose, and find that the text of Cooley and Addison above quoted is fully sustained by them, and we have not seen a single one that does not hold the justification complete, where it appeared at the time of the killing the dog was engaged in worrying and tearing domestic animals in their own lawful enclosure, and the necessity for the killing in order to protect the property was made apparent.

It is urged, however, that the case of Brent v. Kimball, 60 Ill. 211, announces a different doctrine and fully sustains the instructions given in this case to the jury.

An examination of that case will show that it is not as broad as contended for in its application to this case. The evidence in that case, without conflict, showed that the dog passing along a highway became scared by some boys, and ran into the yard of the defendant, whereupon the defendant came out with his gun and shot him. The court say : " Appellee does not pretend in his evidence that the dog at the time of the killing

was doing any mischief to person or property, but claims, more, as it seems, upon suspicion than knowledge, that the dog had previously destroyed his hens' nests or eggs."

From this statement it is seen that the court at the outset disclaims any design to pass upon the question of the right of the defendant to kill the dog if he had, at the time been doing mischief to person or property.

The counsel for appellee has quoted the following from that opinion in support of his position: "If the dog had a vicious habit, and appellant had previous notice of it, an action would lie against him for the damage done by his dog; but it does not follow that the party injured may justify the killing of the dog for that reason, any more than he could the killing of a breachy animal for breaking into his corn." "Except in the cases where a dog is discovered in the act of killing, worrying or chasing *sheep*, or under such circumstances as to satisfactorily show that he has recently been so engaged, the cases provided for by the statute, and except where he has been recently bitten by another dog which is mad, or may be reasonably supposed to be so, or where a dog is ferocious and attacks persons, we do not know that any one besides the master has a right to kill it;" citing in support of this position Hinckley v. Emerson, 4 Cowen, 351, " and cases therein cited."

Sheldon, J., in Patterson v. McKinney, opinion filed Nov. 20, 1880, says: A single expression selected from an opinion is not always to be solely relied on as showing what was the true decision, but the tenor of the whole opinion is to be regarded."

Applying this rule to the above decision of Brent v. Kimball, and it is easily seen what was intended by the court in the expressions quoted. The dog in that case, at the time he was killed was not engaged in the destruction of property, but it was claimed that he had destroyed the defendant's hens' nests; but this claim rested upon suspicion only, and the real decision was that such suspicion was not a justification for the killing, and as to the fact of his being at the time upon the premises of the defendant, that, at most, was but a mere trespass, for which there was no more warrant for shooting him

than there would be for killing a breachy animal for breaking into his corn.

The expressions in the opinion relied upon might, if standing alone, give some support to the views of counsel, but considered with reference to the whole case then before the court, we think it is in harmony with the statement of Addison, that " after the chase is discontinued and the peril has ceased," the dog cannot be lawfully killed, and we might add, especially upon suspicion alone.

The court in the expressions quoted were stating certain cases in which a dog might be killed by any one, although not at the time indulging his destructive propensities, referring to the cases provided by statute and others where the right existed at common law. But that the case was not intended to abridge the natural right of a person to defend his domestic animals against the actual attack of a dog, is very evident from the expression of the court itself, that the dog was not doing mischief at the time of the killing, and from the case in Cowen, cited in support of the statement of the court, where Woodworth, J., says, after stating the same doctrine as Justice McAllister, " It seems to be the law that when a dog chases and kills one's domestic animals on his own land, he may kill the dog," referring to Wadhurst v. Damme, Cro. Jac. 45, and Barrington v. Turner, 3 Lev. 28. " But if the dog merely chases or bites an animal in order to justify killing the dog, it is necessary to show that he could not otherwise be separated," citing Wright v. Ramscott, 1 Saund. 84. It is clear from the language of the opinion in Brent v. Kimball, that it was not intended to hold that the statute deprived a person of the right of defending his person or property from the attacks of dogs, for in the opinion itself are enumerated several cases where the right to kill a dog is admitted to exist, which cases are not provided for by the statute, but are considered as still existing by the common law.

The first section of the statute makes the owner of any dog liable in an action on the case for all damages that may accrue to any person or persons in this State by reason of such dog killing, wounding or chasing any sheep, or other domestic ani-

mal belonging to such other person or persons. The second section provides that, "If any person shall discover any dog or dogs in the act of killing, wounding or chasing sheep in any portion of this State, or shall discover any dog or dogs under such circumstances as to satisfactorily show that such dog or dogs have recently been engaged in killing or chasing sheep for the purpose of killing them, such person is authorized to immediately pursue and kill such dog or dogs.

This section of the statute, it appears to me, does not confer upon the owner of sheep any power to kill a dog when actually engaged in killing such sheep that such owner did not possess at common law; but it does confer upon him the right to pursue and kill the dog after the killing of the sheep by the dog has been accomplished, and the peril has ceased—a right, the existence of which at common law may well be doubted. The statute also authorizes the owner or any other person to pursue and kill a dog if he is discovered under such circumstances as satisfactorily show that he has recently been engaged in sheep-killing or chasing them for the purpose of killing. Here is a case where a dog may be killed upon suspicion, if the suspicion is "founded upon facts and circumstances sufficient in themselves to satisfy a reasonably prudent man that the dog had committed the statutory offense.

The dog may, in fact, be innocent, but if the appearances are against him, he may lawfully be killed by any person. This right to kill the dog upon suspicion that he had destroyed property, did not exist at common law, nor does it now exist in other than statutory cases, and this appears to be the real point of the decision in Brent v. Kimball.

We conclude that the natural right of a man to defend his domestic animals upon his own premises from the attacks of dogs, is not taken away by the decisions of the common law courts, nor by our statute; that his right to an action against the owner of the dog or dogs for the injury done by them is merely cumulative to his prior right of making a reasonable defence to protect his property from such assailants. As we have seen, there must exist an apparent necessity for such defense, and the defense actually made must not be excessive,

but reasonably necessary under all the circumstances of the case for the protection of his own animal.

The judgment will be reversed and the cause remanded.

<div align="right">Reversed and remanded.</div>