THOMAS M. DUNNING

v.

JOHN BIRD.

*Dogs—Action for Damages for Killing—Justification.*

In an action to recover damages for killing a dog, it is *held:* That the killing was justifiable, the dog having been found late at night destroying the defendant's property on his premises; and that as the dog was a trespasser, the owner can not complain that the plaintiff's building was insecure.

[Opinion filed October 5, 1887.]

APPEAL from the County Court of Pope County; the Hon. GEORGE A. CROW, Judge, presiding.

Messrs. ROSE & SLOAN, for appellant.

Messrs. W. S. MORRIS & SON, for appellee.

WILKIN, J. This was an action of trespass for killing a dog. The pleas are not guilty, justification in defense of property and in defense of person. A trial before a jury in the County Court resulted in a verdict and judgment for the plaintiff below for $20 and costs, and defendant appeals.

The dog killed was one of a pack of eleven fox hounds, this one and three others belonging to appellee and the others to a

neighbor. The dogs passed to and from the respective places of their owners, staying sometimes at one place and sometimes at the other. There is no controversy as to the fact that different ones of the pack had from time to time trespassed on the premises of appellee, this one with others having been driven out of his smoke-house. The only evidence found in the bill of exceptions as to the circumstances under which the killing took place, is the uncontradicted testimony of appellant. He says his wife woke him up about eleven or twelve o'clock at night; said dogs were in the smoke-house again. "I got up, took my gun, as dogs had been there before and one had jumped at me. As I went out I saw a man run away from back of house. I went back, got pistol and told wife to rattle on door of smoke-house. I went to back of smoke-house and found where dog had made hole into smoke-house. Wife rattled on door and dog came out and as he came out of hole turned toward me and growled and I shot at him—think I hit him. He still came on and I shot again—think I missed him. He kept on coming and I shot again with revolver and he fell dead." He then states that he found pieces of bacon in the smoke-house partly eaten by dogs. The only other evidence tending to prove the killing, corroborates him as to the fact that the dog was shot on his premises, and that several shots were heard at the time. There is absolutely nothing in the record to contradict or impeach this statement, unless it be found in the unnaturalness of his conduct in not shooting the dog as he came out, and before he turned to attack him.

We have been unable from a careful inspection of the evidence to find any justification for discrediting the statements of appellant and giving credit thereto; we unhesitatingly hold that the killing was justifiable. A great deal of legal learning has been devoted to, and able opinions written on the law relating to the defense of person and property against the attacks of dogs and other animals of that class.

Most of the cases bearing on the subject may be found collated in Aldrich v. Wright, 53 N. H. 398, found in the American Reports, Vol. 16, page 339. See also the case of Anderson v. Smith, 7 Ill. App. 354.

It is unnecessary to enter into a discussion of that subject here. There is no authority holding a person liable for killing a dog under circumstances like those detailed by appellant, and if there was, it would be without binding force upon either individuals or courts, because of its unreasonableness. We do not ignore the right of property in dogs. We do not hold that they may be killed with impunity, nor for trivial causes. We are prepared to cheerfully follow the decisions of our Supreme Court in Brent v. Kimball, 60 Ill. 211, and Spray v. Ammerman, 66 Ill. 309; but they have no bearing upon this case. Here the dog was away from his master and the places at which it belonged, late at night, trespassing on appellant's premises and destroying his property.

That appellant was bound to only use such force as was necessary to drive him away, taking chances on his immediate return, when he had again retired, and look to an unknown owner for compensation for damages sustained, can not be the law, and we hold that when he found him coming out of his building, where he had property which he knew the animal would, by instinct, destroy, it being at a late hour of night, having no means of knowing his owner, and knowing the disposition of such an animal under such circumstances to return to the place where he was found, he had a right to shoot him, in the reasonable necessary defense of his property. It is no answer to say that it was the duty of appellant to so construct his building that the dog could not get in it. The dog was a trespasser and it does not lie in the mouth of his owner to say that the building was insecure. There is no evidence tending to show that the animal was tempted to come upon appellant's premises by his misconduct.

But on the plea of defense of person, under the evidence, the verdict should have been for the defendant below. Suppose the dog had been a person committing burglary and when surprised, instead of fleeing, turned upon the one discovering his crime, and when fired upon, continued to advance, manifesting a disposition to do violence, would not the one thus threatened be justified by the law in shooting him? Shall it be said that a stricter rule obtains where the life of a dog is taken?

However much pleasure or even profit there may be in the ownership of dogs, no one has a right to enjoy that pleasure or profit and so far disregard the rights of others as to permit them to go unrestrained and unattended at all hours of the day and night, preying upon the property of others.  We think the verdict of the jury is so manifestly against the evidence as that it was an error in the court below not to set it aside and grant a new trial, and for that reason the judgment is reversed.

*Judgment reversed.*