MCCHESNEY *v.* WILSON.

1. DOGS—TRESPASSING—RIGHT TO KILL.
   The fact that a dog is a trespasser does not in itself justify a person in killing him.

2. SAME—NUISANCE—QUESTION FOR JURY.
   Where a person killed a dog which had killed his chickens and continually committed nuisances about his premises, the question of his liability should have been submitted to the jury, to determine whether the killing was reasonably necessary under all the circumstances.

3. EXEMPLARY DAMAGES—PUNISHMENT.
   It is error to instruct the jury that exemplary damages include damages given for the purpose of punishment.

Error to Missaukee; Chittenden, J. Submitted October 9, 1902. (Docket No. 27.) Decided February 17, 1903.

Case by Samuel W. McChesney against Ari W. Wilson for the alleged willful killing of plaintiff's dog. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Reversed.

This suit originated in justice's court, and was appealed to the circuit court, where plaintiff recovered a verdict and judgment for $20 for the value of his dog, which was shot and killed by the defendant. The dog was on the defendant's premises, and in the act of urinating through a screen cellar window, at the time he was shot. He had killed three of defendant's chickens and eaten one. He was in the habit of frequently urinating through the defendant's screen door onto his carpet. Defendant and his wife had frequently driven him away with clubs. Defendant testified that once, when he and his wife were going at night to feed the pigs, the dog stood in the path, and would not let her pass, and that she had to pick up a

stick and drive him away. He notified plaintiff of all these acts on the part of his dog. Two neighbors testified that the dog had killed some of their chickens, and that they notified him of the fact; and one testified that he told him he would kill the dog if he did not keep him away, and that plaintiff asked him why he did not. Plaintiff admitted that he had killed some of his own chickens. Plaintiff did not deny that the defendant and the others notified him of the acts of his dog. It is true plaintiff testified that his dog was a bird dog, but did not testify that he or any one else had ever hunted with him. The dog's disposition for birds and for hunting then appears from plaintiff's cross-examination, as follows:

"*Q.* Now, you say that this dog was a bird dog?

"*A.* Yes, he was subject to that.

"*Q.* He had a kind of leaning towards chickens, didn't he?

"*A.* Oh, yes.

"*Q.* That's the kind of a bird dog he was,—he killed chickens?

"*A.* Yes, he killed some in my yard."

The court directed a verdict for the plaintiff, leaving the jury only the question of damages. Defendant interposed no defense in the justice's court.

*U. S. Albertson,* for appellant.

*F. O. Gaffney,* for appellee.

GRANT, J. (*after stating the facts*). The court instructed the jury that the defendant was not justified in killing the dog, unless he was in the act of chasing, killing, or annoying his sheep or other domestic animals. The following facts are conclusively established:

1. That the dog was a killer of domestic fowls.

2. That he was a frequent trespasser upon the premises of the defendant, and frequently committed the disgusting nuisance above mentioned.

3. That plaintiff was notified by the defendant and others of the disposition of his dog.

4. That he took no steps to restrain him.

Evidently the attention of the learned circuit judge had not been called to the cases of *Hubbard* v. *Preston*, 90 Mich. 221 (51 N. W. 209, 15 L. R. A. 249, 30 Am. St. Rep. 426), and *Throne* v. *Mead*, 122 Mich. 273 (80 N. W. 1080, 80 Am. St. Rep. 568), otherwise I think he would have directed a verdict for the defendant. Under the principle laid down in these decisions, the defendant was justified in killing the dog. That there is property in dogs, for which the owner may recover in a proper case, is conceded; but this does not authorize a party to keep a dog of the character of the one in this case, who almost daily commits a nuisance at his neighbor's house, and kills and destroys his neighbor's domestic fowls. No statute is needed to justify the injured party in killing a dog of this character when he appears upon the premises, after notifying the owner of his depredations, and giving him ample time to take care of him. Whether the statute (2 Comp. Laws, § 5592) is broad enough to include domestic fowls it is unnecessary to decide. See *Marshall* v. *Blackshire*, 44 Iowa, 475.

This is not a case where a dog is found for the first time committing a nuisance in trespassing, or in killing fowls or animals. This is not the case of *Bowers* v. *Horen*, 93 Mich. 420 (53 N. W. 535, 17 L. R. A. 773, 32 Am. St. Rep. 513), where the offense with which the dog was charged was in walking over a freshly painted porch, and once being found in a henhouse without doing any damage, and in going around the defendant's house at night, chasing cats into trees, and barking. In that case stress was laid upon the fact that the defendant, knowing who the owner was, failed to notify him that the dog gave him any annoyance. Had the defendant in that case done so, a different result might have been reached, under the decision of *Hubbard* v. *Preston, supra*.

Some stress is laid upon the fact that the defendant kept two dogs himself, one a male and the other a female. No complaint, however, is made against these dogs. The

only testimony in regard to them is that the male dog was about a year old, and was kept tied up in defendant's barn, and that the female dog was a puppy, four months old, and was also kept within doors.    The fact that defendant kept dogs which annoyed no one affords no excuse for plaintiff's keeping a vicious dog.

The law, in my opinion, justified the defendant in killing this dog.    One desiring to keep such a dog because of his companionship, of his ability to perform amusing tricks, and even render some valuable service, such as bringing in sticks of wood, and carrying notes to his master, must at least keep him off his neighbor's premises.    In *Hamby v. Samson*, 67 Am. St. Rep. 285 (s. c., 105 Iowa, 112, 74 N. W. 918, 40 L. R. A. 508), will be found a valuable note collating the authorities on this question.    They are not harmonious, and many of the decisions are based upon statutes.

Judgment reversed, and new trial ordered.

HOOKER, C. J.    The plaintiff recovered a verdict and judgment for $20 for the killing of his dog by the defendant, who admits that he shot him.    The reason given upon the trial was that, on the occasion of the shooting, the dog was in the act of urinating upon a cellar window screen at defendant's house, and defendant testified that he had on one or more occasions urinated through a screen door upon a carpet in his house, and that he was in the habit of urinating upon the exterior of the house.    He also testified that he had some time previous killed three chickens belonging to him.    There was testimony that he was a bird dog, and had killed chickens for one or more other neighbors.    There was no claim that he was pursuing chickens on the occasion of the shooting.    There was also testimony that he disturbed defendant at times by his barking.    The defendant has appealed.

I concur in the opinion that the judgment must be reversed because the court took from the jury the question whether the killing of the dog was justifiable, and directed

a verdict for the plaintiff, and because the jury were instructed that exemplary damages *include damages given for the purpose of punishment,* though it may be doubtful if any such damages were allowed by the jury.

The day has gone by when a dog is an outlaw, and his master remediless when he is wantonly killed. Many dogs are valuable,· and many cases so hold. It is not an open question in this State, as the cases hereinafter cited will show. See, also, *Wheatley* v. *Harris,* 4 Sneed, 468 (70 Am. Dec. 258); *Parker* v. *Mise,* 27 Ala. 480 (62 Am. Dec. 776); *Dodson* v. *Mock,* 20 N. C. 146 (32 Am. Dec. 677); *Nehr* v. *State,* 35 Neb. 638 (53 N. W. 589, 17 L. R. A. 771); *Bowers* v. *Horen,* 93 Mich. 420 (53 N. W. 535, 17 L. R. A. 773, 32 Am. St. Rep. 513). The statute gives the right to kill dogs which worry sheep, and perhaps it is not correct to say, as an abstract proposition, that the only time a person is justified in killing a dog is when he is chasing, killing, or annoying sheep or other domestic animals. The fact that a dog is a trespasser does not *in itself* justify one in killing him. See *Marshall* v. *Blackshire,* 44 Iowa, 475; *Corner* v. *Champneys,* Taunton Lent Assizes 1814, mentioned in 2 Marsh. C. P. 584; *Sosat* v. *State,* 2 Ind. App. 586 (28 N. E. 1017); *Brent* v. *Kimball,* 60 Ill. 211 (14 Am. Rep. 35). Circumstances may be such as to justify the killing of a trespassing dog. *Lipe* v. *Blackwelder,* 25 Ill. App. 119; *King* v. *Kline,* 6 Pa. St. 318; *Dunning* v. *Bird,* 24 Ill. App. 270. Again, the barking or howling of a dog does not justify killing him if it can be otherwise prevented. *Brill* v. *Flagler,* 23 Wend. 354. The same rule applies as to chasing animals. We have a stringent statute for the protection of sheep. But it has no application to this case, and the rule cited above has application to other animals. Thus, the fact that a dog has worried cattle does not justify killing him. *Hinckley* v. *Emerson,* ·4 Cow. 351 (15 Am. Dec. 383); *Spray* v. *Ammerman,* 66 Ill. 309; *Vere* v. *Cawdor,* 11 East, 568; *Janson* v. *Brown,* 1 Campb. 41; *Leonard* v. *Wilkins,* 9 Johns. 233; *Liver-*

*more* v. *Batchelder*, 141 Mass. 179 (5 N. E. 275); *Wright* v. *Ramscot*, 1 Saund. 84; *Boecher* v. *Lutz*, 13 Daly, 28. In Illinois it is held that the relative value of the dog and the animal attacked by him is to be considered in determining the right to kill the dog for the protection of the animal. *Anderson* v. *Smith*, 7 Ill. App. 354. See, also, note to *Hubbard* v. *Preston*, 15 L. R. A. 249, 30 Am. St. Rep. 426 *et seq.* (s. c., 90 Mich. 221, 51 N. W. 209).

It has been said that the cases of *Hubbard* v. *Preston* and *Throne* v. *Mead*—both Michigan cases—required the circuit judge to direct a verdict for the defendant. *Hubbard* v. *Preston* will be found to hold that, under an exasperating combination of circumstances, a man has a right to protect himself from a nuisance by killing a dog, and in such case it is for a jury ( not the court ) to decide whether the killing was a reasonable means of abating the nuisance. In the case of *Bowers* v. *Horen*, 93 Mich. 420 (53 N. W. 535, 17 L. R. A. 773, 32 Am. St. Rep. 513), Mr. Justice GRANT held that "the law does not justify the killing of a neighbor's valuable dog because he has left tracks on a freshly painted porch, has been found on one occasion in the henhouse, and has come around the house at night, chased cats into the trees, and barked." In that case attention is called to the fact that the defendant did not inform the owner that the dog annoyed him, and the same might have been found to be true by the jury in this case, had it been left to them, and if it is important. The case of *Throne* v. *Mead* involved the question of sheep and the statute, and was rightly decided, but does not affect this case.

The testimony tends to show that this was a useful and valuable dog; that the defendant himself kept a dog, and also a bitch, upon his premises. There was a dispute about the habits of the dog as to staying at home. On the other hand, the defendant testified to many annoyances; that he deliberately shot the dog, but did not intend to kill him, and was sorry he had done so, because it had made him so many enemies. Under these circumstances

the question should have gone to the jury to say whether the shooting of this dog was, under all of the circumstances, reasonably necessary.

The other question involves the measure of damages. Our understanding is that the rule in this State limits exemplary damages to the aggravation of the injury to feelings which arises from malice, and does not permit damages for the purpose of punishment. In the justice's court the plaintiff recovered $100, which was reduced to $20 upon the trial in the circuit. There is little reason for believing that any punitory damage was allowed, but it is possible that the defendant was injured by this instruction.

For the reasons given, I concur in the reversal of the cause.

MOORE and MONTGOMERY, JJ., concurred with HOOKER, C. J.