THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN POPE, Defendant-Appellant.

Fourth District   No. 14871

Opinion filed December 13, 1978.

Franz K. Fleischli, III, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry and James G. Condon, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Following a bench trial, the defendant, John Pope, was convicted of the offenses of criminal damage to property (Ill. Rev. Stat. 1977, ch. 38, par. 21—1(d)), and disorderly conduct (Ill. Rev. Stat. 1977, ch. 38, par. 26—1(a)(1)), and was subsequently sentenced to 1 year of probation and fined $500. On appeal, the defendant contends that he was not proved guilty beyond a reasonable doubt and that the trial court denied him a full and fair hearing.

The testimony at trial revealed that the defendant came to the complaining witness' house at approximately 10:30 a.m. on the day in question and informed her that he was going to shoot her black Labrador retriever because it had been killing his sheep. The complaining witness testified that as they argued, the dog came over to her and that she was holding onto the dog when the defendant fired the first shot. The dog ran as the defendant continued to fire and it was eventually killed without the complaining witness' consent. In addition, the complaining witness noted that there were houses in the direction in which the defendant was firing.

The defendant testified that he observed four dogs attack and kill several of his sheep at approximately 9:30 a.m. on the day in question. He noted that the leader of the pack was a black Labrador retriever owned by the complaining witness. He testified that he frightened the dogs away and then discussed the problem with two of his employees. The three

men decided to wait until early lunch before pursuing and destroying the dog. The defendant noted that at the complaining witness' home he fired the first shot as the complaining witness touched the dog and that he continued to shoot as the dog ran a distance of approximately 70 feet. He stated, however, that he was firing in open territory into a ditch across the road and that he had a large margin of safety on each side of the target.

At the conclusion of the defendant's testimony the trial court inquired whether the other defense witnesses would testify in corroboration. Defense counsel replied in the affirmative, and the trial judge then stated that the defense could present other witnesses but that the court was not interested in testimony which was merely cumulative. The trial judge added that it would accept the defendant's testimony as the complete truth. Defendant's counsel then rested his case and declined to present argument. The trial court thereafter found the defendant guilty as charged.

The crux of the defendant's argument on appeal is that his conduct in shooting the dog was justified and, in fact, authorized by statute, since he had observed the dog earlier in the morning attacking and killing some of his sheep. The defendant contends that his conduct was authorized by the following statutory provision:

> "Any owner seeing his sheep, goats, cattle, horses, mules, swine, or poultry being injured, wounded, or killed by a dog, not accompanied by or nor under the supervision of its owner, may pursue and kill such dog." Ill. Rev. Stat. 1977, ch. 8, par. 368.

One of the few Illinois cases to consider an earlier form of this statutory provision held that a sheep owner could pursue and kill a dog after the dog had killed some of the owner's sheep. (*Anderson v. Smith* (1880), 7 Ill. App. 354.) That case noted, however, that an owner does not have the right to destroy a dog after the chase is discontinued and the peril to the animals has ceased. The court in *Anderson* concluded that a man has the right to defend his domestic animals upon his own premises from the attacks of dogs, but the court noted there must exist an apparent necessity for such defense and such must not be excessive but reasonably necessary under all circumstances for the protection of his animals. Another case considering the earlier form of the statute in question noted that the killing of a dog is justified only where the dog is discovered in the act of killing or disturbing the livestock or where the circumstances satisfactorily show that the dog has recently done so. (*Brent v. Kimball* (1871), 60 Ill. 211.) In this case, the defendant testified that he observed the dog killing his sheep at approximately 9:30 a.m. on the morning in question. However, the defendant noted that he waited for approximately an hour or more before pursuing the dog and eventually shooting it on the complaining witness' property.

■■ ■ Considering all of these factors in light of the prior case law, the defendant's conduct in shooting the dog on the complaining witness' property was not authorized by statute. That statutory provision allows the owner of livestock that has been killed to immediately pursue and kill a dog as long as it is not accompanied by or under the supervision of its owner. Here, there was no immediate pursuit of the dog. The first shot was fired while the dog was under the supervision of its owner. Furthermore, the discharging of a gun in a residential area at a moving target can hardly be considered as reasonable conduct. Consequently, sufficient evidence was presented at trial to establish all the elements of the charged offenses as well as to prove the defendant guilty beyond a reasonable doubt.

The defendant further contends that the trial court improperly restricted the presentation of his case since the trial judge stated that he was not interested in hearing defendant's other witnesses because their testimony would corroborate defendant's testimony. The record shows that after the defendant had testified, the trial judge inquired if the other witnesses for the defense would corroborate the testimony of the defendant. Defendant's counsel replied that such testimony would, indeed, corroborate the defendant's testimony. The trial judge stated that the other witnesses would be called but that the court was not interested in hearing them if their testimony was completely corroborative. The trial judge noted that he would accept what the defendant said as the complete truth, the whole truth, and nothing but the truth. Following that statement, the defense counsel stated that he would rest his case. The trial judge then inquired if the defense counsel wished to argue the case, and counsel replied that he saw no need to "rehash" what the defendant had just testified about a few moments earlier. The trial judge stated he did not wish an argument from the State and again offered the defense counsel an opportunity for argument, which was declined.

■■ Thus, contrary to the defendant's contentions, the record reveals that the defendant was afforded a full and fair hearing with an opportunity to fully present his case.

Finally, the defendant argues that the trial court revealed its bias against the defendant at the sentencing hearing when the trial judge noted his disgust for the users of firearms as well as when he noted that the only thing that impressed him about the defendant was the fact that the defendant belonged to a group interested in controlling firearms.

■■ These comments immediately preceded the sentencing and indicated a concern by the trial judge regarding the misuse of firearms as well as a disgust for the destruction of a living creature. As such, the record indicates no personal prejudice toward the defendant by the trial court but rather those comments prior to sentencing indicate a concern for the

irresponsible manner in which the defendant chose to remedy a situation that should have been directed to the proper law enforcement authorities. Thus, in view of the evidence at trial, the trial judge's remarks were not improper and certainly not an indication of bias or hostility toward the defendant.

Accordingly, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

REARDON, P. J., and GREEN, J., concur.