# WILEY LIPE

## V.

## WILLIAM L. BLACKWELDER.

*Dogs—Trespass—Action for Damages for Shooting Trespassing Dog—Instructions.*

1. Every person has a right to defend and protect his property of every kind and character from injury or destruction, provided he uses only such means as are reasonably necessary under the circumstances.

2. In the case presented, it is *held:* That the defendant had a right to protect his wheat field from trespassing dogs; that it was for the jury to determine whether, under the circumstances, it was proper for him to shoot the plaintiff's dog, or whether his property might have been protected by less extreme measures; and that the instructions fairly submitted the case to the jury.

[Opinion filed June 14, 1887.]

APPEAL from the Circuit Court of Montgomery County; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Mr. J. M. TRUITT, for appellant.

Messrs. LANE & COOPER, for appellee.

CONGER, P. J. This was an action originally brought by appellant against appellee before a Justice of the Peace, for injuries inflicted by appellee upon appellant's dog. A trial was had before a jury, resulting in a verdict and judgment for appellee. Upon appeal to the Circuit Court and trial before a jury, the result was the same.

The parties to the suit are farmers, residing about one mile apart. Appellant is the owner of seven or eight hounds which he keeps for hunting purposes. At the time of the alleged injury about twenty acres of appellee's land was in growing wheat, the land having been rented by appellee to one Nussman. It was claimed by appellee, and some evidence was offered tending to support such claim, that in the early spring and during the time the wheat was maturing, the dogs of appellant were in the habit of running through this wheat, chasing rabbits and other game, until they had trampled down and destroyed eighteen or twenty bushels of the growing wheat, and had several times prior to the shooting been driven out with clubs.

The circumstances of the shooting are thus detailed by the appellee in his testimony:

"Last June I shot one of plaintiff's hounds while he was running through my wheat; plaintiff's hounds had been accustomed to run in said wheat field all season, and were damaging it by knocking it down. Mr. Nussman, my tenant, told me I must keep the dogs out of the wheat [to which last statement defendant objected and excepted]. I saw them in there several times, and heard them at other times; I never saw more than three or four hounds in there at any one time, and generally only saw two. There was eighteen or twenty acres of wheat in the piece. I heard a couple of hounds in the wheat and took my gun, loaded with No. 6 shot, and went into the wheat, and when the dogs came within about forty yards of me I shot one of them, a black and white fellow. I shot the dog when he was coming straight toward me, because he was in the wheat field and I could not keep

Lipe v. Blackwelder.

them out any other way. The dogs had knocked down enough wheat to make twenty bushels of wheat; they were running rabbits in the wheat, and made roads in it."

The dog was not killed, but the effect of the shot upon him is described as follows by appellant: "Before he was shot he was worth at least $10; after being shot he was crippled and sore for a long time, and is still stiff from the effects of the shooting, so that he is physically damaged—but the most serious damage comes from his being made 'gun-shy,' that is, afraid of a gun. A gun-shy dog will quit chasing whenever he hears a gun discharged; it matters not who discharges the gun, it is all the same; he will quit the chase and sneak away when he hears a gun discharged. I have had a great deal of experience all my life with hounds, and have owned a great many of them during the last thirty or forty years, and have had large experience with and hunted with hounds belonging to others, and know that it ruins a hound for hunting purposes to shoot him. After a hound becomes gun-shy he is worthless. Since my dog was shot by defendant I have taken him out to chase wolves and foxes several times, and find that he is gun-shy and quits running the trail whenever he hears the sound of a gun. For the purposes of hunting he is now worthless and has been ever since defendant shot him, and always will be, the result of being shot by defendant."

The court, at the instance of appellee, gave the jury the following instructions:

(2.) " The court instructs the jury that if they believe from the evidence, that the relative value of the plaintiff's dog and the portion of defendant's growing wheat which was being destroyed by said dogs, if the evidence shows that any wheat was being destroyed, were not disproportionate, and that the defendant, to protect his property from such destruction, necessarily exercised the right to defend his property in a reasonable manner, all the circumstances surrounding the transaction being considered, then the jury will find for the defendant." (3.) " The court instructs the jury that the defendant had the right to use such means as were necessary for the pur-

pose of putting the dogs out of his field, and if in so doing it resulted in the mutilation of the animal in question it would not be a violation of law, and if the jury believe, from the evidence, that the defendant used such means as a reasonable man would use, all the circumstances considered, to exclude the dogs from his field and from his wheat, and did no more harm to the dog than was necessary, under 'all the circumstances proved in the case, then the jury will find for the defendant." It is insisted that these instructions are erroneous; that however appropriate they might be, where one was defending his *animate* property from destruction, they are not the law as applied to the protection of inanimate property.

Counsel state the proposition in the following words: "Appellee had not the right to exercise the same force to protect his wheat field, inanimate property, which he might have been justified in using had appellant's dog been found worrying and seemingly about to destroy a valuable domestic animal, animate property, belonging to him."

We fail to see the propriety of the distinction made by counsel.

Every man has a right to defend and protect his property of every kind and character from injury or destruction, provided he uses only such means as are reasonably necessary under the circumstances. And the reasonableness or unreasonableness of the means used is always a question of fact for the jury.

Thus, in King v. Kline, 6 Pa. St. 318, when a dog was killed while in the act of getting fish down from the wall where they had been hung to dry, the court say: "And his property, whether meat or fish, in his cellar, in his kitchen or in his yard, it was lawful for him to preserve against any man's dog; and if he could not otherwise protect it, he might kill the dog when caught on his premises in the act of destruction. Whether he could not preserve his property and the customary use of it without destroying the animal committing depredations, when found in the act, ought to have been submitted to the jury by the court, as a question within their province to decide."

In the case at bar appellee had a right to protect his wheat

Lipe v. Blackwelder.

from trespassing dogs, and if, in the opinion of the jury, it could not be done by any reasonable means except those used by appellee, and that such means were, under the circumstances, reasonable and proper, he would not be liable to appellant for the injury resulting therefrom.

In determining the question of the reasonableness of resorting to such extreme measure to protect property, the value of the animal doing the mischief, the disturbance and mischief likely to be wrought, the probability of less severe measures being successful and the necessity for immediate action, are all elements to be considered in reaching a conclusion.

As was said in Anderson v. Smith, 7 Ill. App. 359, "There must be an apparent necessity for the defense, honestly believed to be real, and then the acts of defense must in themselves be reasonable. Acts beyond reason are excessive. The consequences of the proposed act to the aggressor should be considered in connection with the consequences of non-action to the party defending, whether the defense be made in favor of person or property."

We think the instructions fairly submitted the law to the jury. Appellant's third instruction, which told the jury that if appellee shot the dog for no other reason than that the dog *had been accustomed* to run through his wheat, they should find for appellant, announced a correct principle of law, and had the evidence justified it, should have been given.

But the evidence was undisputed that the dog was at the time of being shot trespassing upon the wheat, and appellee's uncontradicted statement being that he shot, "because he was in the wheatfield and he could not keep him out any other way," it can hardly be presumed that the jury would indulge the presumption that appellee shot the dog, for the reason given in the instruction.

If the refusing of the instruction was error, we do not think it worked any injury to appellant. Neither do we think the remarks of the court in passing upon the evidence prejudiced the appellant.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*