WILLIAM M. HARRIS, JR., *vs.* WILLIAM D. EATON.

PROVIDENCE—MAY 5, 1897.

PRESENT : Stiness, Tillinghast and Rogers, JJ.

A licensed dog is property, and may be the subject of larceny.
An unlicensed dog going at large has no apparent protection under the law, and may be killed by any person.

A licensed dog not having on a collar with the owner's or keeper's name distinctly marked thereon may be killed anywhere outside the enclosure of its owner or keeper.

Any person may kill any dog that may suddenly assault him, or any person of his family or in his company, while the person so assaulted is out of the enclosure of the owner or keeper of such dog.

And any person may kill any dog found out of the enclosure of its owner or keeper, wounding or killing any neat cattle, sheep, lamb, horse, hog, or fowl, not the property of the owner of the dog.

Any officer charged with the service of an execution in a suit against the owner of a dog for a second recovery of damages committed by such dog, may kill the dog as commanded in such execution.

Authority to kill objectionable dogs may be obtained, under prescribed conditions, on complaint to the justice or clerk of a District Court.

But one cannot legally kill a licensed dog that is trespassing and doing damage on his premises, although its owner may have been notified of previous trespasses of like kind and requested to prevent their recurrence.

The owner of a dog is liable for the damages it may do.

TRESPASS for killing plaintiff's dog.    Heard on demurrer to defendant's plea of justification.

ROGERS, J.    The plaintiff demurs to defendant's plea of justification in an action of trespass for killing the plaintiff's dog while trespassing on the close of the defendant's master.

The following are substantially the allegations set out with great minuteness in the defendant's plea:   For more than two years prior to the time of the killing, the plaintiff's dog had been constantly and repeatedly in the habit of trespassing on the close of one A. M. Eaton, and had there chased and killed certain fowls and animals, and had been driven off of said close while killing said fowls, and at other times, while trespassing on said close, being fired at by said A. M. Eaton or by others his servants or agents ; yet nevertheless the said plaintiff, after having been so notified of the killing of said fowls, and that his said dog had been fired at while so trespassing, and after having been requested and told by the said A. M. Eaton to keep his dog chained or shut up and off of the said close, or he the said dog would be shot, refused and neglected so to do, but on the contrary continued and has continued down to the time when, &c., to allow his said dog to run at large and to trespass constantly on the close of the said A. M. Eaton.    And when said dog was

killed he was again trespassing upon the said close with the knowledge of the said plaintiff, at the time and soon after eight rabbits had been killed on the said close of said A. M. Eaton, by some dog or dogs, or other animal or animals, to the defendant unknown, and the defendant had reason to believe, and did believe, that said plaintiff's dog had taken part in killing said rabbits, whereupon he, acting as the agent of said A. M. Eaton, and with knowledge of the premises, and with knowledge thereof by the plaintiff, who nevertheless was then and there allowing his said dog to run at large and to continue to trespass upon said close, fired at said dog and other dogs then and there trespassing on said close, with a gun loaded with gun powder and bird shot, not for the purpose or with the intent of killing said dog, but to frighten him and drive him off of said close, and by chance the said dog was struck in some vital spot, and died in consequence thereof.

Analyzed and stripped of its verbiage the plea resolves itself into this, that the plaintiff's dog was trespassing on the close of the defendant's master, under more or less aggravating circumstances, and that the defendant, as agent for his master, fired a shot gun, not with the intent of killing said dog, but to scare him and drive him off of said close, and by chance the said dog was struck by said defendant's shot in some vital spot, and died in consequence thereof.

We fail to see how a voluntary act committed by the defendant, which he was under no obligations to do, and which resulted in injury to the plaintiff, even if it produced effects not intended or foreseen, can justify such injury; though the lack of evil intent might mitigate the damages, if anything more than compensatory damages is claimed. Williams, C. J., in *Vincent* v. *Stinehour*, 7 Vt. 62, 66, lays down the rule thus: "When a person is doing a voluntary act, which he is under no obligation to do, he is held answerable for any injury which may happen to another, either by carelessness or accident." See also *Wright* v. *Clark*, 50 Vt. 130, 135; *Underwood* v. *Hewson*, 1 Str. 596.

Though the plea alleges that the dog was shot merely by

chance, the purpose and intent being to frighten him away and not to kill him, yet, whatever the intent, did any of the circumstances set up in the plea, by way of inducement or otherwise, justify a killing? We think not. Gen. Laws R. I. cap. 111, define the legal status of a licensed dog. An unlicensed dog going at large has no apparent protection under the law, and any person may kill him, § 13. So a licensed dog, not having on a collar with the owner's or keeper's name distinctly marked thereon, may be killed anywhere outside of his owner's or keeper's enclosure, § 4; and any peason may kill any dog that may suddenly assault him, or any person of his family, or in his company, while the person so assaulted is out of the enclosure of the owner or keeper of the dog, § 6. *Spaight* v. *McGovern*, 16 R. I. 658. Any person likewise may kill any dog found out of the enclosure of his owner or keeper, worrying, wounding or killing any neat cattle, sheep, lamb, horse, hog or fowl, not the property of the owner, § 6; and any officer charged with the service of an execution in a suit against the owner of a dog for a second recovery of damages committed by such dog shall kill the offending dog, as commanded in such execution, § 3. In § 7 of said cap. 111 is a provision for making complaint to a justice or clerk of a District Court wherein, after certain proceedings, authority may be obtained for killing objectionable dogs. Said cap. 111 makes a licensed dog property and the subject of larceny, and makes the owner of any dog liable for the damage he may do. Defendant's special plea nowhere brings the plaintiff's dog within the provisions of said cap. 111 authorizing any one other than his master to kill him.

Neither the fact that the plaintiff's dog was a trespasser on A. M. Eaton's close, nor that he had previously committed depredations to property there, would afford justification for killing him, for Mr. Eaton could recover reparation for such injuries. In *Brent* v. *Kimball*, 60 Ill. 211, 213, the court says : ''Appellee does not pretend, in his evidence, that the dog, at the time of the killing, was doing any mischief to person or property, but claims, more, it seems, upon suspicion than knowledge, that the dog had previously destroyed his

hens' nests or eggs.   If the dog had a vicious habit, and appellant had previous notice of it, an action would lie against him for the damages done by his dog.   But it does not follow that the party injured may justify the killing of the dog for that reason, any more than he could the killing of a breachy animal breaking into his corn."   In this State no notice of the viciousness of his dog would have been necessary before bringing an action for damages done by the dog.   Neither is it any justification that the plaintiff had been notified that his dog was in the habit of trespassing, and had been shot at by Mr. Eaton, or was going to be shot at by him if again found trespassing.   Notice would be sufficient to justify under the statutes of some States, but not of this, for complaint to a justice or clerk of a District Court should have been resorted to and the required proceedings had, to justify killing the dog.

There are decisions in various States that one may defend and protect his property from dogs, and when necessary for that purpose, to kill the dog.   *Anderson* v. *Smith*, 7 Ill. App. 354; *Lipe* v. *Blackwelder*, 25 Ill. App. 119; *Ten Hopen* v. *Walker*, 96 Mich. 236; and *Livermore* v. *Batchelder*, 141 Mass. 179.   In the latter case, which was tort for killing the plaintiff's dog, it appeared that said dog, with another dog, came upon the defendant's premises, and there killed and maimed hens of the defendant, which were in his hen house or shed.   The dogs were driven away, and, in about fifteen minutes afterwards, came again upon the defendant's premises, and were running towards the same shed and hen house of the defendant, when the defendant, having reasonable cause to believe that the dogs were proceeding to maim and kill other of his hens in said shed and hen house, shot and killed the plaintiff's dog.   The court held that killing the dog was not in law justifiable, for to justify the killing the defendant should have shown, not only that he had reasonable cause to believe that the dog was proceeding to maim and kill his hens, but *also* that he had reasonable cause to believe that it was necessary to kill the dog in order to prevent him from killing the hens.

The plea nowhere shows that the plaintiff's dog, when killed, was worrying, wounding or killing any of the animals mentioned in said cap. 111, § 6, or that the defendant had reasonable cause to believe that it was necessary to kill the dog in order to protect his property other than the animals mentioned in said § 6.

In our opinion the defendant's special plea in bar sets up no sufficient cause in justification of killing the plaintiff's dog, and the demurrer thereto is sustained and case remitted to the Common Pleas Division for further proceedings.

*John W. Hogan*, for plaintiff.

*Walter B. Vincent*, for defendant.