CRUISE & SMILEY CONSTRUCTION CO. *vs.* TOWN COUNCIL OF TOWN OF LINCOLN.

· JANUARY 7, 1920.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ

*1.* *Explosives.   Blasting.   Town Councils.*

Gen. Laws, 1909, cap. 50, § 21 authorizes town councils to prescribe rules and regulations governing the use of explosives for any and all purposes which includes their use for blasting.

*2.   Explosives.   Blasting.   Town Councils.*

While a town council is authorized under Gen. Laws, 1909, cap 50, § 21, to prohibit the use of explosives for blasting in the absence of a license, it is also true that the power to make rules and regulations under Section 29 of the same chapter carries with it, at least impliedly, the power also to require a license.

*3.   Mandamus.   Discretionary Powers.*

Mandamus will not lie to control the exercise of a discretionary power by a public official.

MANDAMUS.   Heard on appeal from decree of Superior Court dismissing petition.   Appeal dismissed.

VINCENT, J.   This case comes before us on appeal from a decree of the Superior Court denying and dismissing the petition for a writ of mandamus. The petitioner seeks to have the respondent ordered to issue to it a license to conduct certain blasting operations in the town of Lincoln.

The respondent filed a motion to dismiss the petition upon two grounds: (1) because the Superior Court had no jurisdiction to grant a writ of mandamus; and (2) because the petitioner had not stated a case sufficient in law to justify the issuance of such writ.

The petitioning corporation alleges in substance that it owns certain real estate located on Arnold avenue in the town of Lincoln consisting almost wholly of a ledge of rock, which ledge unless removed renders the premises useless. That it purchased said premises for the purpose of utilizing said rock for crushed stone in furtherance of its construction business. That in August, 1919, the petitioner notified the town council of its intention to remove said rock by blasting whereupon said town council on September 4, 1919, amended its ordinances and added thereto, among other things, the following section: "Section 1. No person shall use any gunpowder, gun-cotton, dynamite, nitro-glycerine, or other explosive for blasting within the limits of the Town of Lincoln, except upon license therefor duly granted by the Town Council, upon application made to said Council for that purpose, setting forth the location at which it is proposed to do such blasting, and upon such terms, conditions and restrictions as said Council may impose." That on September 6, 1919, petitioner made formal application to said town council for a license to blast. That on September 9, 1919, petitioner received fr )m said town council a request for further specifications regarding location of proposed blasting. That on September 11, 1919, petitioner filed with the council a reply to such request, together with a plat. That on September 20, 1919, at a meeting of the town council said petition was heard and petitioner was given leave to withdraw. That petitioner, relying on the ordinances as they existed prior to the amendment, had entered into contracts for machinery, materials and labor to be used in connection with the development of said premises, all of which will involve considerable loss to petitioner unless a blasting license is granted.

It does not appear that prior to the amended ordinance of September 4 there was anything in the ordinances of the town requiring any notification, permit or license to do blasting. The petitioner while admitting it to be the duty of the town council to prescribe reasonable rules and regulations governing the use of blasting materials claims that it has the right, as a matter of law, to blast upon its own land in compliance with such rules and regulations; that the action of the town council requiring a permit to do blasting is illegal and void; that the said town council is only authorized and empowered to make rules and regulations and is without power to prohibit blasting or to require its assent before the right to do so can be exercised; and that Section (1) 21, Chapter 50, General Laws of 1909, relates to the general use of explosives by the people at large while Section 29 of the same chapter allows the free exercise of the right to blast subject only to such reasonable conditions and restrictions as the municipality may determine.

Section 29 was enacted in 1895 and is included in General Laws of 1896 as Section 28 of Chapter 40. Section 21 was enacted in 1902, Public Laws, Chapter 988, and is now Section 21 of Chapter 50 of the General Laws of 1909.

Chapter 988 of the Public Laws contains no repealing clause and therefore we come directly to the question as to whether under Section 29 the petitioner has the right to carry on blasting as a matter of right, only subject to such rules and regulations as the town council may prescribe or whether he must obtain a license under the provisions of Section 21.

We do not see any conflict between these two sections. There may be some difficulty in seeing any usefulness in retaining Section 29 after the enactment of Section 21. The powers with which town councils are invested by Section 29 are included in those covered by Section 21. Under Section 21 they are authorized to prescribe rules and regulations governing the use of explosives for any and all purposes which would include their use for blasting.

We cannot agree with the contention of the petitioner that Section 21 relates to the "general use of explosives and explosive substances by the people at large" and that those who desire to use explosives for blasting are absolved from the provisions of that section and are only answerable to those of Section 29. It is true that Section 21 extends the supervision of the town council to the manufacture, storage, keeping, having in possession, sale and use of all explosives irrespective of any purpose for which they are to be used or by whom they are to be used and specially empowers the town council to grant licenses for such use and in the absence of such license to prohibit the use of the same.

(2)

If we consider the case independently of Section 21, we think that the power to make rules and regulations under Section 29 carries with it, at least impliedly, the power to require a license. The matter of granting a license is one of discretion on the part of the town council having in view the safety of the community and the protection of property.

It seems to be well settled that mandamus will not lie to control the exercise of a discretionary power, which would in effect substitute the discretion of the court for that of the person or body designated by statute and the law upon this point is well summarized in 18 R. C. L. p. 124, as follows: "It is a well recognized rule that where the performance of an official duty or act involves the exercise of judgment or discretion, the officer cannot ordinarily be controlled with respect to the particular action he will take in the matter; he can only be directed to act, leaving the matter as to what particular action he will take to his determination. Therefore, where an officer, in the exercise of a discretionary power, has considered and determined what his course of action is to be, he has exercised his discretion, and his action is not subject to review or control by mandamus. And as a general rule where an officer or subordinate body is vested with power to determine a question of fact involving the examination of evidence and passing on its probative force and effect the duty is judicial, and though it can be

(3)

compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it be made to appear what the decision ought to be. Were the rule otherwise, instead of officers discharging their duties in accordance with their own discretion, that of a court would be substituted therefor. . . . On the other hand, if, in matters involving discretion, the inferior tribunal or officer refuses to act in *toto*, mandamus may issue to move him to action, leaving him to determine what particular action he will take in the matter."

In further support of the proposition that mandamus will not lie to direct or control the exercise of a discretionary power we may cite *State* v. *Town Council*, 18 R. I. 258; *Corbett* v. *Naylor*, 25 R. I. 520; *Kenney* v. *State Board of Dentistry*, 26 R. I. 538; *Roach* v. *Town Council of East Providence*, 35 R. I. 363.

The petitioner's appeal is dismissed, the judgment affirmed and the petition is remanded to the Superior Court for further proceedings.

*Charles A. Walsh*, for petitioner.
*Albert B. West*, for respondent.

---

WINNIE LEWIS MONROE *et al.* FOR AN OPINION.

JANUARY 7, 1920.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, Stearns, and Rathbun, JJ.

*(1)  Wills.  Joint Tenancy.*

Residuary clause of will provided, "I give to B. and C. the income from the residue of my estate both personal and real, share and share alike, during their lifetime, and at their deaths, I give and bequeath all the residue of my estate both personal and real to the X. Public Library as a memorial."

B. deceased, and upon the question as to the application of that one-half of the income during the life of C.:—

*Held*, that under Gen. Laws, 1909, cap. 252, § 1, it manifestly appeared that the intention of testatrix was that B. and C. should take the income as joint tenants and the entire income should be paid to C. as surviving beneficiary.

Petition for construction of will under Gen. Laws, 1909, cap. 289, § 20.

Stearns, J.   This is a petition for the construction of the will of Susan S. Flagg, deceased, brought under the provisions of Section 20, Chap. 289, Gen. Laws, 1909.

From the agreed statement of facts made by all the parties in interest, it appears that Susan S. Flagg, a resident of the city of Central Falls, died November 15, 1913.   By her last will and testament, after making a number of small bequests to various persons, she disposed of the bulk of her estate by a residuary clause which we are now asked to construe and which is as follows:   "I give to Amy A. Whipple and Winnie Lewis Monroe of Central Falls, R. I. the income from the residue of my estate both personal and real, share and share alike, during their lifetime, and at their deaths, I give and bequeath all the residue of my estate both personal and real to the Central Falls Public Library, as a memorial to the late Lisander Flagg and his family."

The income from the residue of the estate has been heretofore paid in equal shares to Amy A. Whipple and Winnie L. Monroe.   Amy A. Whipple died October 30, 1919, and Winnie Lewis Monroe now claims that she is entitled to the entire income of the residue of the estate during her lifetime.   The city of Central Falls claims that it is entitled to one-half of said income for the benefit of the Central Falls Public Library.   Said city waives the right to file a brief and submits its rights to the court on the agreed statement of facts.

The amount of the residuary estate is approximately twenty-one thousand dollars and the income therefrom is approximately sixteen hundred dollars.

The opinion of this court is requested upon two questions, namely,—Should the income of the residuary estate be paid in its entirety to Winnie L. Monroe as surviving residuary beneficiary; if she is entitled to receive only one-half of said income, what disposition should be made of the other half

of said income during the life of Winnie L. Monroe? The primary question is,—Were Amy A. Whipple and Winnie L. Monroe joint tenants or tenants in common of the income of the residuary estate?

Section 1, Chapter 252 of the Gen. Laws, 1909, is as follows: "Section 1. All gifts, feoffments, grants, conveyances, devises, or legacies, of real or personal estate, which shall be made to two or more persons, whether they be husband and wife or otherwise, shall be deemed to create a tenancy in common and not a joint tenancy, unless it be declared that the tenancy is to be joint, or that the same is (1) to such persons and the survivors or survivor of them, or to them as trustees or executors, or unless the intention manifestly appears that such persons shall take as joint tenants and not as tenants in common."

We are of the opinion that it manifestly appears that the intention of the testatrix was that Amy A. Whipple and Winnie Lewis Monroe should take the income of the residue of the estate as joint tenants and not as tenants in common.

The residuary clause appears to be the principal clause of the will and thereby the testatrix disposes of the bulk of her estate and establishes a memorial to the late Lisander Flagg. A clear distinction is made by the testatrix in the disposition of the income and the *corpus* of the residuary estate. The beneficiaries of the income, Amy A. Whiple and Winnie Lewis Monroe are given the whole and undivided income, "share and share alike"; the period of time during which the income and corpus of the estate are to be kept separate is to be "during their lifetime"; by the terms of the will it is only "at their deaths" that the testatrix is then for the first time desirous of making a gift to the library, and at that time the separation of the income from *corpus* of the estate is to come to an end. We have here all the essentials of a joint tenancy, namely, unity of interest, title, time, and possession, accompanied by the clear and evident intention of the testatrix as manifested by the

provisions of the will to create a joint tenancy and not a tenancy in common.

Our opinion is that the entire income of the residuary estate should be paid to Winnie Lewis Monroe as surviving beneficiary of the joint tenancy created by said will.

The conclusion we have reached disposes of the second question to which no answer is now required.

*James L. Jenks* for Winnie Lewis Monroe and Augustus A. Mann.

*Lawrence F. Nolan, City Solicitor*, for City of Central Falls.