Gunter **VUKIC** et al.

v.

Roy **BRUNELLE** et al.

No. 91–69–A.

Supreme Court of Rhode Island.

May 26, 1992.

Mary E. Theall, Daniel V. McKinnon, McKinnon & Harwood, Pawtucket, Anthony J. Cordeiro, Carrillo & Cordeiro, Providence, for plaintiffs.

Michael P. Lynch, Inman & Tourgee, Coventry, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendants' appeal from a judgment entered in the Superior Court wherein the dog officer of the town of Lincoln was found to have negligently destroyed a Great Dane dog and her pup. We reverse. The facts and travel of the case are as follows.

On February 27, 1984, three Great Danes owned by Gunter and Joyce Vukic managed to escape the confines of their kennel at the Vukic residence in the town of Lincoln. One of the Great Danes, Scar-

lett, had won championship awards at a number of prestigious dog shows. The two other Great Danes, Gemini and Alabama, were considered to be the best female and male offspring of Scarlett's first litter. The three dogs wandered at large around the neighborhood and ultimately onto the property of Wayne and Penny Farmer. Penny Farmer first noticed the dogs walking near a rabbit cage approximately thirty to forty feet from her house. She went out into the backyard in an attempt to "shoo" them away from the cage. However, because of their immense size she withdrew and sent her husband to deal with the dogs. Wayne Farmer also attempted to chase the dogs out of the yard without success. They continued to meander about the property and eventually laid down on the Farmers' deck. Because the Farmers' thirteen-year-old daughter was due home from school shortly and might be frightened or even attacked by the Great Danes, the Farmers decided to telephone the town dog officer, constable/special police officer Roy Brunelle (Brunelle), in order to have the dogs removed from the premises. After failing to reach Brunelle at his office, the Farmers called the Lincoln police department in an effort to locate the dog officer. In that telephone call Penny Farmer told the police that the three Great Danes had threatened her and her husband and that they were presently on her front steps. She said that she did not know whether the dogs were dangerous. The police advised her that Brunelle would be dispatched promptly to the Farmers' residence.

When Brunelle arrived at the Farmer home he emerged from his truck with a shotgun and began to approach the Great Danes. He ascertained that they were not collared with licenses issued by the town of Lincoln. Several moments later the Farmers observed Brunelle running back toward his truck, followed by the three dogs. Brunelle and the dogs arrived at the truck at approximately the same time. What happened next is a matter of some controversy. According to the Farmers' trial testimony, the Great Danes were not acting aggressively toward the dog officer in any way. Brunelle, however, claimed at trial that he had to fend off the Great Danes with the butt of his shotgun for what seemed to him to be a minute and a half. It is undisputed that Brunelle turned subsequently and fired at the dogs, striking two of them. This initial shotgun blast killed one of the pups, Alabama, and wounded its mother, Scarlett. Brunelle then fired an additional two shots, destroying Scarlett. The third dog, Gemini, was put to sleep as a result of trauma related to the shootings.

The Vukics filed suit in the Superior Court against the town of Lincoln and also against Brunelle in his individual capacity, alleging that the dog officer had been negligent in the shooting deaths of the two Great Danes. The dog that later had to be put to sleep was not made a subject of the lawsuit. Following a jury trial, a verdict was returned in favor of plaintiffs in the amount of $33,000 plus interest of $24,090 for a total judgment of $57,090. The defendants thereafter filed a motion for remittitur and a motion for a new trial, both of which were denied by the trial justice. The defendants then appealed to this court. They argue that the trial justice erred in failing to grant defendants' pretrial motion to dismiss the action in light of the legislation pertaining to dogs in effect statewide at the time of the shootings. General Laws 1956 (1976 Reenactment) § 4–13–12 required that a dog officer destroy any dog found at large and not licensed and collared according to law. The defendants also raise other issues in their brief. However, because we conclude that Brunelle had a legal duty to destroy the Great Danes, it is not necessary to consider these other matters.

In 1896 the General Assembly enacted comprehensive legislation for the purpose of regulating the activities of dogs in Rhode Island and their ownership, later codified as G.L.1956 (1976 Reenactment) chapter 13 of title 4. The legislation included provisions concerning the licensing of dogs, the liability of dog owners for damage caused by their animals, and the right of private citizens to defend themselves against dog attacks. *Id.* It also

provided for the summary destruction of unlicensed dogs found at large. Section 4–13–12 provided:

> "Any person may, and every such special constable, so appointed, and every police officer and constable shall, kill or destroy or cause to be killed or destroyed, all dogs going at large and not licensed and collared according to law; and for each dog so killed, destroyed and buried, such special constable shall be entitled to receive from the town or city treasurer the sum of two dollars."[1]

In addition to these provisions that were to be applicable statewide, the legislation enabled municipalities to enact "such ordinances concerning dogs in their respective cities or towns as they shall deem expedient." Section 4–13–1, as amended by P.L. 1983, ch. 286, § 1.

 We are required in the case at bar to harmonize two provisions of chapter 13 of title 4 that are in apparent conflict. The defendants contend that the language of § 4–13–12 that directed specially appointed dog officers to destroy all dogs found at large without a license supersedes any local ordinances to the contrary. They assert that Brunelle carried out his legal duty as established by § 4–13–12 in his shooting of the Vukics' Great Danes. The plaintiffs, however, contend that the terms of § 4–13–1 permitting municipalities to enact local dog ordinances "as they shall deem expedient" afford the town of Lincoln the right to create a procedural safeguard to ensure that prior to destroying unlicensed dogs every effort is made to find and notify the dog owners. See Lincoln, R.I.Code § 3–26. The plaintiffs argue that such an ordinance does not countermand the obligations that were settled upon dog officers pursuant to § 4–13–12 but only attempts to mitigate the harsh result envisioned by the state statute. They assert that, in keeping with the Lincoln ordinance, Brunelle was required to impound the Great Danes and to contact the Vukics so that they might regain custody of the dogs. With this we must disagree. We conclude that the Lin-

coln ordinance is superseded by the provisions of § 4–13–12 and that Brunelle acted according to law in his destruction of the Great Danes.

 It is well established that cities and towns have no power to enact legislation except in reliance upon those powers delegated to them from time to time by the General Assembly. *Bertrand v. DiCarlo*, 111 R.I. 509, 304 A.2d 658 (1973). When the right to exercise a portion of the state's sovereignty is delegated to a municipality by the General Assembly, this authority may be utilized only to the extent of the power conferred. *Andruzewski v. Smith*, 105 R.I. 463, 252 A.2d 914 (1969). Although the provisions of § 4–13–1 conferred upon municipalities the power to pass local dog ordinances "as they shall deem expedient" it is clear that the General Assembly did not intend any such acts to supplant the statewide scheme for regulating dogs set out in chapter 13 of title 4 of the General Laws. The savings clause included in § 4–13–3 provided that "Nothing in this chapter shall be so construed as to repeal any ordinance concerning dogs, *not inconsistent with the provisions hereof,* which has heretofore been passed by any town or city council." (Emphasis added.) The delegation of power to municipalities to pass ordinances regarding dogs was therefore not a plenary one but was plainly bounded by the scope of the state's own legislation. This court has always understood the regulations provided under chapter 13 of title 4 to be measures of general applicability, not to be undermined or displaced by contrary ordinances regarding dogs enacted by particular cities or towns. *See Wilbur v. Gross*, 55 R.I. 473, 182 A. 597 (1936); *Oldham v. Hussey*, 27 R.I. 366, 62 A. 377 (1905); *Harris v. Eaton*, 20 R.I. 81, 37 A. 308 (1897). As a consequence these statutes must be given effect in any conflict with local legislation that also bears upon the activities of dogs or their ownership.

 It is evident that the Lincoln ordinance is indeed in conflict with the provi-

---

**1.** General Laws 1956 (1976 Reenactment) § 4–13–12 was repealed by P.L.1985, ch. 270, § 1, which became effective on June 19, 1985, after the incident at issue in the case at bar.

sions of § 4–13–12 and is therefore superseded by the state statute. Section 4–13–12 mandated that dog officers and other appropriate officials *"shall [ ] kill or destroy* or cause to be killed or destroyed, all dogs going at large and not licensed and collared according to law."* (Emphasis added.) This charge was meant to be a legal duty to be carried out without exception. By way of contrast, § 4–13–12 also contained a provision giving private citizens permission to destroy any unlicensed dogs found at large at their discretion.[2] It is undisputed in the case at bar that the Great Danes had escaped the confines of their owners' property and that none of them was collared with a license issued by the town of Lincoln.[3] Brunelle therefore had an unqualified duty as a duly-appointed dog officer to destroy the Great Danes once he had ascertained their unlawful status. Any obligation created by the Lincoln ordinance to have acted otherwise, such as by impounding the dogs instead of killing them, must fall away in the face of the paramount state statute.

The plaintiffs contend that the provisions of § 4–13–12 requiring that dog officers destroy all unlicensed dogs found at large are absurd, unjust, and ultimately archaic in light of the changes in Rhode Island since the enactment of the statute in 1896. They assert that § 4–13–12 was enacted when Rhode Island was primarily rural in nature and that its provisions were designed to control wild dogs at a time when such animals caused extensive property damage to farmers and other keepers of livestock. The plaintiffs argue that as Rhode Island has become highly urbanized in the ninety-odd years since the passage of § 4–13–12, we should refuse to give effect to the statute in the instant case because it serves no legislative purpose that is presently germane. We cannot accept plaintiffs' argument.

Even assuming, *arguendo,* that the plaintiffs' characterization of § 4–13–12 has some merit, it is not our function to reexamine the General Laws selectively and to decide that certain of its provisions are no longer especially useful in present-day society. It is instead the responsibility of the General Assembly to ascertain whether a particular statute is out of date and to be rescinded. It must be emphasized that the power of the General Assembly is plenary and is limited only so far as prohibited by the express provisions of the United States or Rhode Island Constitutions. *Kass v. Retirement Bd. of Employ-*

---

**2.** Section 4–13–12 provided in part that: *"Any person may * * * kill or destroy or cause to be killed or destroyed, all dogs going at large and not licensed and collared according to law * * *."* (Emphasis added.)

**3.** At trial, plaintiffs sought to prove that the Great Danes were constructively licensed and that therefore Brunelle did not destroy the dogs under color of § 4–13–12. In support of their contention, plaintiffs presented evidence that Scarlett, the mother of the two other Great Danes, was registered in East Bridgewater, Massachusetts. Additionally plaintiffs offered testimony that Gunter Vukic had placed a call to the Lincoln Town Hall to inquire about Lincoln's licensing requirements. He was allegedly told by a town official that such licensing was usually done in the spring. In light of plaintiffs' evidence, the trial justice determined that the issue of whether the dogs had been constructively licensed was a matter for the jury. We are constrained to point out, however, that licensure is typically a matter of state or local concern. *Baffoni v. State Dept. of Health,* 118 R.I. 226, 373 A.2d 184 (1977); *Andruzewski v. Smith,* 105 R.I. 463, 252 A.2d 914 (1969); *Cruise & Smiley Constr. Co. v. Town Council of Lincoln,*

42 R.I. 408, 108 A. 419 (1920). A license issued by one state has no validity in another state unless that state decides affirmatively to honor the license or the United States Constitution mandates that such a license be honored. There is no indication that the General Assembly accepted out-of-state dog licenses as valid in Rhode Island at the time of the shootings. Consequently Scarlett cannot be considered to have been constructively licensed in Lincoln because of her registration in East Bridgewater. Furthermore, a determination that the Great Danes were constructively licensed as a result of statements made to Gunter Vukic by a Lincoln town official is irrelevant to the question of Brunelle's liability. In the execution of his duties, Brunelle must be able to rely upon the information made available to him by the town as well as the product of his own on-scene investigation. From Brunelle's perspective, the Great Danes were found at large and were not licensed and collared according to state or local law. We are persuaded accordingly that the issue of constructive licensure has no bearing on the disposition of the case at bar.

*ees' Retirement System,* 567 A.2d 358 (R.I. 1989); *Forte Bros. v. State Department of Transportation,* 541 A.2d 1194 (R.I.1988).

In regard to the case at bar the General Assembly either enacted or reenacted legislation concerning dogs in at least fifteen different sessions subsequent to the passage of § 4–13–12 in 1896. *See* annotation to chapter 13 of title 4. It chose not to repeal § 4–13–12 until 1985, having had numerous opportunities to have done so before that time. It cannot be more apparent that the General Assembly considered § 4–13–12, despite its severity, to be an appropriate means of animal control until the time of its repeal. It is deeply unfortunate that the enforcement of § 4–13–12 led to such tragic consequences in the instant case. However, we cannot say that Constable Brunelle acted contrary to law in his destruction of the plaintiffs' Great Danes.

For the foregoing reasons the defendants' appeal is sustained and the judgment of the Superior Court is reversed. The papers in the case may be remanded to the Superior Court with directions to enter judgment for the defendants.