MOTION TO DISMISS
The matter now before this Court is the Defendant's motion to dismiss the criminal complaint which charges the Defendant with a violation of West Warwick ordinance § 93-12. The Defendant objects to the West Warwick ordinance based on the following arguments:
(1) in enacting the ordinance, the West Warwick Town Council ("Council") acted without lawful authority;
(2) the subject matter of the ordinance is preempted by State statutes, thereby causing the ordinance to be null and void;
(3) the ordinance violates the First and Fourteenth Amendments to the United States Constitution and Art. I, Sections 2, 21 and 24 of the Rhode Island constitution;
(4) the ordinance denies the Defendant the equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution and Art. I, Section 2 of the Rhode Island constitution, because Sections 12-23.1(A), (B) and 12-23.2 of the ordinance prohibit the displaying of the female breast and not the male breast, and
(5) the ordinance is overbroad and vague.
Jurisdiction in this Court is pursuant to R.I. Dist. R. Crim. Proc. 23.
FACTS
The Defendant owns Anthony's Show Place ("Anthony's"), a nightclub, located at 549 Quaker Lane, West Warwick, Rhode Island. After receiving complaints indicating that there were topless female dancers at Anthony's, the West Warwick Police Department's Special Investigative Unit began an investigation of Anthony's. As a result of this investigation, the Defendant was charged with violating West Warwick ordinance § 93-12, which became effective on July 8, 1993. The ordinance reads as follows:
Chapter 12
Article II — Adult Entertainment SECTION 12-21 Purpose.
The purpose of this ordinance is to prohibit certain acts of commercial exploitation of human sexuality in commercial establishments within the Town of West Warwick where alcoholic beverages are served or offered for sale for consumption on the premises and to reduce the likelihood of criminal activity, moral degradation a disturbances of the peace and good order of the community which may occur when such commercial exploitation is permitted in such places.
 SECTION 12-22 Findings. The Town Council finds that there is an increasing commercial exploitation of human sexuality by owners and operators of commercial establishments within the Town of West Warwick where alcoholic beverages are served or offered for sale for consumption on the premises. Such exploitation takes place in the form of employing or permitting persons to perform or exhibit their nude or seminude bodies to other persons as an inducement to such other persons to purchase alcoholic beverages. The direct results of such exploitation are criminal activity, moral degradation and disturbances of the peace and good order of the community. In addition, such commercial exploitation of such nude and seminude acts is adverse to the public's interest in the quality of life, tone of commerce and total community environment in the Town of West Warwick.
 SECTION 12-23 Prohibition.
12-23.1. It shall be unlawful for any person maintaining, owning or operating a commercial establishment located within the boundaries of the Town of West Warwick, Rhode Island, at which alcoholic beverages are offered for sale for consumption on the premises:
 (A) To suffer or permit any female person, while on the premises of said commercial establishment, to expose to the public view that area of the human female breast at or below the top of the areola thereof.
 (B) To suffer or permit any female person, while on the premises of said commercial establishment, to employ any device or covering which is intended to give the appearance of or simulate such portion of the human female breast as described in Section 12-23.1(A).
 (C) To suffer or permit any person, while on the premises of said commercial establishment, to expose to public view his or her genitals, public area, buttocks, anus or anal cleft, or cleavage.
 (D) To suffer or permit any person, while on the premises of said commercial establishment, to employ any device or covering which is intended to give the appearance of or simulate the genitals, pubic area, buttocks, anus, anal cleft, or cleavage.
 12-23.2 It shall be unlawful for any female person, while on the premises of a commercial establishment located within the boundary areas of the Town, at which alcoholic beverages are served or offered for sale for consumption on the premises, to expose to public view that area of the human female breast at or below the top of the areola thereof, or to employ any device or covering which in [sic] intended to give the appearance or simulate such areas of the female breast as described herein.
12-23.3 It shall be unlawful for any person, while on the premises of a commercial establishment located within the boundaries of the Town, at which alcoholic beverages are offered for sale for consumption on the premises, to expose to public view his or her genitals, pubic area, buttocks, anus, or anal cleft or cleavage.
The penalty for a violation of this ordinance is found in § 1-10 of the West Warwick ordinances: ". . . the violation of any such provision of this Code or any such ordinance or resolution shall be punished by a fine of not more than Five Hundred ($500.00) Dollars or by imprisonment of not more than thirty (30) days. Each day any violation of this Code or of any such ordinance or resolution shall continue shall constitute a separate offense."
At the West Warwick Town Council meetings of June 8 and June 15, 1993, § 93-12 was introduced, read and accepted. Afterwards, on June 18, 1993, a summary of the purpose of the ordinance was published in the Kent County Daily Times. The minutes of the Council contain no record of any hearing on the ordinance. The minutes of June 8, 1993 indicate only that the town solicitor "explained the background of the ordinance and what it does," but no specific findings were ever referred to in any of the minutes. Thus, the only findings made in support of the ordinance are those found in the ordinance itself.
I.
In order for the West Warwick ordinance to be valid, the Council must have had the authority to enact it. The scope of the Council's authority to enact ordinances must be analyzed under both the United States and Rhode Island constitutions. SeeMickens v. City of Kodiak, 640 P.2d 818 (Alaska 1982). This Court's discussion of the Council's authority will begin with the analysis under the United States Constitution.
Under Section 2 of the Twenty-first Amendment to the United States Constitution, the State is vested with the power to control the transportation or importation of intoxicating liquors.[1] In exercising this Twenty-first Amendment power, "a State is totally unconfined by traditional Commerce Clause limitations." California v. LaRue, 409 U.S. 109, 115, 93 S.Ct. 390, 34 L.Ed.2d 390 (1972) (citing Hostetter v. Idlewild BonVoyage Liquor Corp., 377 U.S. 324 (1964)). Moreover, "a classification recognized by the Twenty-First Amendment cannot be deemed forbidden by the Fourteenth." Id. at 116 (citing StateBoard v. Young Market Co., 299 U.S. 59, 64 (1936)). This broad grant of power expands the State's general police power and confers "something more than the normal state authority over public health, welfare, and morals." Id. at 115.
This authority to control alcohol is, by the terms of the Constitution, only granted to the States and not to the individual municipalities and townships. See City of Newport v.Iacobucci, 479 U.S. 96, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986). Therefore, in order for cities and towns to possess this Twenty-first Amendment power, the State must delegate its Twenty-first Amendment authority. Although the Rhode Island Supreme Court has not explicitly held that Rhode Island has delegated its Twenty-first Amendment authority to the municipalities, the Rhode Island Supreme Court, in Thompson v.Town of East Greenwich, 512 A.2d 837 (R.I. 1986), impliedly recognized such a delegation.
The Court, in Thompson, found implicit in G.L. 1956 (1987 Reenactment) § 3-5-21 the municipal authority to "attach conditions to the issuance of liquor licenses." Id. at 841. Section 3-5-21 grants the government bodies who issue liquor licenses the power "to revoke or suspend a liquor license for breach of any conditions upon which it was issued." Id. Pursuant to G.L. 1956 (1987 Reenactment) § 3-5-15, the town councils are permitted the "full and plenary power" to issue liquor licenses.Id. Therefore, as a license-issuing entity, the town councils can impose conditions on the distribution of alcohol. This power is equivalent to the State's Twenty-first Amendment authority to control the distribution of alcohol. Accordingly, the Court's determination that municipalities are empowered to establish conditions on the granting of liquor licenses necessarily implies the delegation of the State's Twenty-first Amendment power to control the distribution of alcohol.
The only limit the Court placed on the municipalities' exercise of this delegated power was that "any conditions that a municipality may choose to enforce upon the issuance of a liquor license must be reasonable." Id. at 842 (emphasis in original). This limit is consistent with the requirement, pursuant to the Twenty-first Amendment, that the body enacting the conditions on liquor "show that a permissible motive exists for the legislation," thereby demonstrating that the enactment was reasonable. Lanier v. City of Newton, Ala., 842 F.2d 253 (11th Cir. 1988). Thus, with respect to the situation in the case at bar, this "limitation" does not negate the State's delegation of its Twenty-first Amendment authority. As the following discussion will show, the analysis of whether West Warwick acted properly under its delegated Twenty-first Amendment powers implicitly incorporates a "reasonableness" requirement.
II.
As stated above, the Council must show that a permissible motive exists for the legislation. If no permissible motive is offered, the ordinance is invalid. Id. However, the Council "need not make the showing. . . that it would have passed the legislation even without. . . [an] impermissible motive," Id.,
because, under the Twenty-first Amendment, there is a presumption of validity which weighs in favor of any legislation controlling liquor. New York State Liquor Authority v. Bellanca, 452 U.S. 714, 719, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981). This presumption reduces the level of judicial scrutiny required of regulations controlling liquor when First Amendment concerns are involved, such as in the case at bar.
In Bellanca, the Court recognized that topless dancing may possess some artistic or communicative value which would be entitled to First Amendment protection. Ordinarily, this finding would require the Court to analyze the ordinance under heightened scrutiny. However, the Court refused to do so and, unlike under traditional First Amendment analysis, did not require the town council to "produce substantial evidence that the prohibited conduct" was causally connected to the conditions the regulation seeks to prevent. Lanier v. City of Newton, Ala., 842 F.2d 253, 256 (11th Cir. 1988). Instead of requiring substantial evidence in support of the legislative purpose behind the regulation, theBellanca Court was satisfied with just the legislative findings set forth in the statute itself. The Court concluded that the First Amendment values inherent in nude dancing were "overcome by the state's exercise of its broad powers arising under the Twenty-first Amendment." Id. Accordingly, the Court held that the regulation of alcohol distribution where nudity is present is a valid exercise of the State's authority.
Implicit in the Bellanca Court's holding is the conclusion that the enactment of such a regulation is a reasonable exercise of Twenty-first Amendment authority. Instead of employing heightened scrutiny when analyzing the ordinance as it would normally do in First Amendment cases, the Court employed a test closer to the minimal scrutiny rational basis test which requires only that the ordinance be "reasonable." Thus, the reasonableness requirement of Thompson v. Town of East Greenwich, 512 A.2d 837
(R.I. 1986) is incorporated into Twenty-first Amendment analysis.
Similarly, in California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 390, the Court examined regulations prohibiting explicitly sexual live entertainment in drinking establishments. The Court explained the relationship between the First, Fourteenth and Twenty-first Amendments in situations falling within the ambit of the alcohol regulations:
 this is not to say that all such conduct and performance are without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department [of Alcoholic Beverage Control] sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater.
Id. at 199. See also City of Newport, Kentucky v. Iacobucci,479 U.S. 92, 98, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986) ("the interest in maintaining order outweighs the interest in free expression by dancing nude.") Accordingly, when faced with a regulation proscribing the combination of liquor and nude or partially nude live entertainment, a court may weigh the competing interests involved to see if the regulation unconstitutionally impinges on First Amendment concerns. Under this balancing test, the power to regulate generally prevails over the "barest minimum of protected expression" involved in nude dancing, Doran v. Salem Inn, Inc.,422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648, as demonstrated by the above cases.
Turning to the ordinance in the case at bar, this Court holds that the ordinance is consistent with the proper exercise of West Warwick's Twenty-first Amendment powers. Within the body of the ordinance, the Council explains the purpose of the regulation and describes the Council's findings. The Council found that the combination of nude dancing and alcohol increased the "criminal activity. . . and disturbances of the peace and good order of the community." These are proper concerns of the Council and, as such, qualify as permissible motives for the enactment of the ordinance. Thus, the requirement for validity under the Twenty-first Amendment is met. Moreover, the ordinance is limited in scope so as to address only the Council's concerns and not to unnecessarily prohibit speech protected by the First Amendment. Nude entertainment is not banned altogether, but is just prohibited from occurring where alcohol is served. Topless dancing can still be performed at locations not serving alcohol. Therefore, the West Warwick ordinance does not unconstitutionally infringe upon First Amendment values inhering in nude dancing. Accordingly, this Court holds that West Warwick's ordinance is a reasonable exercise of the town's delegated powers under the Twenty-first Amendment of the United States Constitution.
III.
The above discussion analyzed the West Warwick ordinance under the United States Constitution. However, the Defendant also challenges the ordinance under the Rhode Island constitution, which does not contain a provision similar to the Twenty-first Amendment. There is no uniform consensus as to the effect of the absence, in a state constitution, of a provision equivalent to the Twenty-first Amendment. However, in one of the most recent decisions on the issue, Dydyn v. Department of Liquor Control,531 A.2d 170 (Conn. App. 1987), cert. denied 485 U.S. 977
(1988), the court held that the analysis should be the same under both the federal and state constitutions.
 The Supreme Court has flatly and squarely held that the `State has absolute power under the Twenty-first Amendment to prohibit totally the sale of liquor within its boundaries. . . . It is equally well established that a State has broad power under the Twenty-first Amendment to regulate the Twenty-first Amendment to regulate the times, places and circumstances under which liquor may be sold.' To now require, as a precondition to the exercise of such power in a manner expressly condoned by the highest court of this Nation, that the State must enact its own counterpart of the Twenty-first Amendment, is without reason or authority.
Id. at 173-74 (citing Bellanca v. New York State LiquorAuthority, 54 N.Y.2d 228, 238-39, 429 N.E.2d 765, 445 N.Y.S.2d 87 (1981)(Gabrielli, J., dissenting))(citations omitted).
The court went on to say that
 the power conferred by the twenty-first amendment does not simply evaporate once the analysis shifts to a determination of the right to free expression under our state constitution. Rather, this independent, federal right to control the traffic in liquor subsists, and, pursuant to the supremacy clause, must be given full recognition and effect, even when we consider the provisions of our own constitution.
Id. at 174. This Court finds the analysis in Dydyn
persuasive. Thus, the analysis of the West Warwick ordinance is the same under the Rhode Island constitution as it is under the United States Constitution. Since the First Amendment protections afforded under the Rhode Island constitution parallel those found in the federal Constitution, the conflict between the protections contained in the First, Fourteenth and Twenty-first Amendments must be resolved in the same manner as under the United States Constitution. See Town of Barrington v. Blake, 568 A.2d 1015
(R.I. 1990). Accordingly, the ordinance constitutes a proper exercise of authority under both the Rhode Island and United States constitutions.
IV.
The Defendant urges this Court to find that the town ordinance is preempted by G.L. 1956 (1994 Reenactment) § 11-31-1, G.L. 1956 (1991 Reenactment) § 45-6-6 and G.L. 1956 (1987 Reenactment) § 3-8-1 et seq., thereby causing the ordinance to be invalid. This Court finds no preemption.
"State statutes must be given effect when they `conflict with local legislation' bearing on the same activities." Vukic v.Brunelle, 609 A.2d 938, 941 (R.I. 1992). The court in Lanier v.City of Newton, Ala., 842 F.2d 253, 259 (11th Cir. 1988), explained how to determine if state law conflicts with local law.
 Whether an ordinance is inconsistent with the general law of the State is to be determined by whether the municipal law prohibits anything which the state law specifically permits. . . . An ordinance which merely enlarges upon the provision of a statute by requiring more restrictions than the statute requires creates no conflict unless the statute limits the requirement for all cases to its own terms.
There is no Rhode Island regulation specifically regulating the combination of alcohol and nudity. The statutes the Defendant refers to regulate either the circulation of obscene publications and shows, § 11-31-1, or alcohol sales, § 3-8-1 et seq., not the combination of the two. Moreover, § 45-6-6, which prohibits town ordinances from punishing behavior already punishable by state statute, does not preempt § 93-12 since there is no statute punishing businesses which serve alcohol and have nude entertainment. Contrary to the Defendant's assertions, the disorderly conduct statute, G.L. 1956 (1994 Reenactment) §11-45-1, does not punish the same behavior as the ordinance since nude dancing in nightclubs is not "likely to cause affront, distress, or alarm" to the persons exposed to such conduct, the consenting adult patrons of the establishment. Therefore, the nude dancing proscribed by the ordinance is not disorderly conduct under this definition. Accordingly, the West Warwick ordinance does not regulate the same behavior that these statutes regulate; it merely expands upon and combines the purposes behind all of these statutes, an effect which does not amount to preemption.
There is, likewise, no preemption under the three part analysis used in Town of East Greenwich v. O'Neil, 617 A.2d 104
(R.I. 1992). The first part of this analysis prohibits local legislation when a uniform regulation of a matter throughout the state is necessary or desirable. This concern is not present in the case at bar because the individual towns are in a better position to decide for themselves whether alcohol and nudity present a problem in their community. The effect of such behavior may differ from town to town so that in some towns there would be no need for any regulation. Therefore, uniform regulation of alcohol and nude entertainment, which would include regulation of towns not requiring such regulation, would infringe on First Amendment values even more than individual ordinances would.
The second part of the O'Neil analysis prohibits local legislation if the subject matter of the legislation is traditionally within the historical domain of one entity. Since the towns are vested with the authority to place conditions on the issuance of liquor licenses, § 3-5-21, yet the State provides additional regulation of alcohol, § 3-8-1, the matter is obviously not traditionally within the domain of one entity.
The final part of the O'Neil preemption test prohibits local legislation when municipal action on the subject will have a significant effect on people outside the "home rule" municipalities. This ordinance does not significantly impact people outside the town. The ordinance does not entirely ban nude dancing or the sale of alcohol, only the combination of the two is proscribed. Therefore, people from outside the town can still enjoy both activities as long as they are done separately. There is, furthermore, no restraint on any trade or business which might cross town lines. The ordinance affects only businesses contained entirely within the town boundaries. Accordingly, since the ordinance is not prohibited by either the Lanier test or the O'Neil test, this Court holds that the ordinance is not preempted by any state statute.
V.
The Defendant contends that the ordinance violates equal protection because it prohibits women from revealing their breasts, but men are not similarly prohibited. This argument was rejected in United States v. Biocic, 928 F.2d 112 (4th Cir. 1991). The court held that "the distinction. . . is one that is substantially related to an important governmental interest."Id. at 115. The government interest involved is the protection of the moral sensibilities of a substantial segment of society which does not want to be exposed "to public displays of various portions of their fellow citizens' anatomies that traditionally in this society have been regarded as erogenous zones. These still include (whether justifiably or not in the eyes of all) the female, but not the male, breast." Id. at 115-16. See alsoCity of Seattle v. Buchanon, 584 P.2d 918, 922 (Wash. 1978).
This argument was also rejected, in dicta, in The Wreck Bar,Inc. v. Comolli, No. 94-0324-T, slip op. at 2 (D.R.I. July 11, 1994)(Torres, J.), where the court stated that this equal protection claim was "patently without merit."
This Court, like the others which have examined the same issue, finds that there is no equal protection problem presented by the provision in the West Warwick ordinance which prohibits the displaying of women's breasts. In so holding, the Court recognizes that "in certain circumstances men and women are not similarly situated," Michael M. v. Sonoma County SuperiorCourt, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) and that the gender classification contained in the West Warwick ordinance is substantially related to these differences which are inherent between men and women. Such a legislative classification is not unconstitutional.[2]
VI.
The Defendant next attacks the ordinance on overbreadth grounds. Ordinarily, a person, such as the Defendant, "to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." Broadrick v. Oklahoma, 413 U.S. 601, 611, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, in the First Amendment area, "attacks on overly broad statutes [are permitted] with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Id. at 613 (citingDombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965)). Since nude dancing deserves some First Amendment protections, as discussed above, the Defendant may bring his overbreadth claim. Nevertheless, this claim fails.
The West Warwick ordinance regulates both speech and conduct. "Where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial, as well, judged in relation to the statute's plainly legitimate sweep." Id. at 616. When the West Warwick ordinance's sweep is looked at in conjunction with its stated purpose and findings, it is not overbroad. As demonstrated by the first two sections of the ordinance, the Council was concerned about the effects of the combination of alcohol and nude dancing and the ordinance is narrowly tailored towards just that combination of activities. Independently, both activities can continue. Moreover, the wording of the statute can be defined through judicial interpretation so that the ordinance will not be applied overbroadly, as discussed in the next section. Accordingly, the ordinance is not overbroad.
VII.
The Defendant argues that "buttocks" and "cleavage" are unconstitutionally vague. This Court interprets the word "buttocks" narrowly, thereby barring any overbreadth or vagueness arguments. The court in Geaneas v. Willets, 911 F.2d 579 (11th Cir. 1990), construed the legislature's use of the word "buttocks" as intending a prohibition against the exposure of any portion of the buttocks. Id. at 586. Since there is no indication that the Council intended otherwise, the same interpretation applies in the case at bar. Accordingly, the following definition of "buttocks" applies to the West Warwick ordinance:
 the area at the rear of the body which lies between two imaginary lines running parallel to the ground when a person is standing, the first or top such line drawn at the tip of the cleavage of the nates [i.e., the prominence formed by the muscles running from the back of the hip to the back of the leg] and the second or bottom line drawn at the lowest visible point of this cleavage or the lowest point of the curvature of the fleshy protuberance, whichever is lower, and between two imaginary lines on each side of the body, which lines are perpendicular to the ground and to the horizontal lines described above, and which perpendicular lines are drawn through the point at which each nate meets the outer side of each leg. The Ordinance would be violated, therefore, if any portion of this area is visible from any vantage point.
Id. at 586-87. With this judicially applied limitation, "buttocks" is not unconstitutionally vague and the word need not be stricken from the ordinance.
"Cleavage," conversely, is not as easily defined as "buttocks." "It is unreasonable to expect a liquor licensee, from the ordinance as written, to know how high a woman's dress must be cut to keep her from exposing to public view `her cleavage.'"Lanier v. City of Newton, Ala., 842 F.2d 253, 259 (11th Cir. 1988). Moreover, since the word is non-gender specific, as it is used in the ordinance, the types of shirts men are required to wear is also unconstitutionally vague. Accordingly, the word "cleavage" should be stricken from the ordinance. This removal, however, does not affect the validity of the rest of the ordinance because of the severability clause found in § 1-5:
 It is hereby declared to be the intention of the town council that the sections, paragraphs, sentences, clauses and phrases of this Code are severable, and if any phrase, clause, sentence, paragraph or section of this Code shall be declared unconstitutional, invalid or unenforceable by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality, invalidity or unenforceability shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of the Code. . . .
Accordingly, this Court holds that the West Warwick ordinance was lawfully enacted under the Council's delegated Twenty-first Amendment authority and is constitutionally valid under the First and Fourteenth Amendments to the United States Constitution and Art. I, Sections 2, 21 and 24 of the Rhode Island constitution. Moreover, the ordinance is not preempted by a state statute and does not deny the Defendant the equal protection of the laws. Furthermore, the ordinance is not overbroad. The word "buttocks" should be interpreted consistent with this opinion and the word "cleavage" should be stricken from the ordinance because it is unconstitutionally vague. The remaining portions of West Warwick ordinance § 93-12 shall remain in full effect. For all of the foregoing reasons, the Defendant's motion to dismiss is denied.
[1] Section 2 states:
"The transportation or importation into any state, territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."
[2] The case cited by the Defendant in support of his equal protection argument, Williams v. City of Fort Worth, 782 S.W.2d 290
(Tex. App. Fort Worth 1989), is not applicable to the case at bar since it was decided under Texas' Equal Rights Amendment, an amendment which Rhode Island never adopted. Kleczek v. RhodeIsland Interscholastic League, Inc., 612 A.2d 734 (R.I. 1992).